### MILLER *against* WARD and others.

The declaration stated, that the plaintiff, in pursuance of an agreement with certain persons in *Vermont*, transported down *Connecticut* river a raft of lumber; which the defendants attached at *Hartford*, in a suit against a third person ; and thereupon entered into a written agreement with the plaintiff, to pay him a certain sum *per* thousand feet, or the customary freight, on his drawing the lumber

THIS was an action of *assumpsit*. The declaration stated, that on the 20th of *July* 1816, the plaintiff contracted with *Hyde Clark* and others, to transport a raft of lumber, being 180 thousand feet, from *Hartland* in *Vermont* to *East-Haddam* in this state, and for such transportation, they agreed to pay him 6 dollars for each thousand feet ; that the plaintiff, in pursuance of this agreement, immediately sailed with the raft, and arrived with it at *Hartford*, on his way to *East-Haddam*, on the 26th of *October* 1816 ; that while he lay at *Hartford* with the raft, the defendants attached it, in a suit in their favour, against *Reuben Chapman* and *Levi Bellows*, for a debt claimed to be due from them, and, by virtue of such attachment, took the raft out of the plaintiff's possession ; that the defendants, thereupon, made and executed their written promise and agreement, dated the 3d day of *December*, 1816, by which they promised the plaintiff to pay him at the rate of 4 dollars, 50 cents, a thousand, or the customary freight on said lumber, meaning thereby the customary freight for transporting lumber from *Hartland* to *East-Haddam*, on his drawing said lumber out of the water, agreeably to custom ; that the customary freight is 6 dollars on each thousand feet of lumber ; that the plaintiff, at *Hartford*, on the 6th of *December*, 1816, offered to draw said lum-

ber out of the water; that the plaintiff offered and began to draw it out, but was prevented by the defendants ; and that, by reason of the premises, the defendant became liable to pay the freight, and in consideration thereof, *promised* o pay the same, but failed to perform their promise : Held, 1. that this action was brought on the written contract, which was on sufficient consideration ; and 2. that the written contract was, of course, the measure of the plaintiff's damages, which could not be reduced in consequence of a previous part-payment of freight, made by other persons.

ber out of the water agreeably to custom, and did, in fact, draw out a part of the same, and was proceeding to draw out, and would, in fact, have drawn out, the whole of the same from the water, pursuant to said contract, but the defendants forbade the plaintiff to do the same, nor would they suffer him to draw out the same from the water according to custom; and that, by reason of the premises, the defendants became liable to pay the plaintiff the sum of 1,200 dollars as freight, and for transporting said lumber as aforesaid; and being so liable, the defendants afterwards, to wit, on the 10th of *December*, 1816, assumed upon themselves, and faithfully promised the plaintiff to pay said sum, when they should be thereunto requested; yet the defendants, their promise aforesaid not regarding, have never performed the same, though often requested and demanded; to the plaintiff's damage, &c.

The defendants pleaded *non assumpserunt*; and on this issue, the cause was tried at *Hartford*, *February* term, 1818, before *Trumbull*, *Baldwin* and *Hosmer*, Js.

On the trial, it was admitted, that the defendants made the writing mentioned in the declaration; that the customary freight for transporting lumber from *Hartland* to *East-Haddam*, was four dollars, fifty cents, for each thousand feet; and that the contract made by the plaintiff with *Hyde Clark* and others, was to pay the customary freight. The plaintiff introduced no testimony to prove any other promise by the defendants, than the one contained in the writing; but he examined witnesses to prove, and claimed that he had proved, that the defendants prevented him from drawing the lumber out of the river according to the terms of the writing. He therefore claimed, that he was entitled to recover damages on the written promise. The defendants, on the other hand, claimed, that as the plaintiff had failed to prove any promise by the defendants to pay freight, other than the one contained in the writing, he was not entitled to a verdict. The defendants also contended, and adduced evidence to prove, that the plaintiff, on the 16th of *November* 1816, received of *Hyde Clark* and others, in advance, to pay tolls at the locks on the river, two sums of money, amounting to 148 dollars; which, in case the plaintiff was entitled to recover any thing, ought to be deducted from the freight claimed by him. The plaintiff insisted, that no deduction ought to be

*Hartford,*
June, 1818.

Miller
*v.*
Ward.

made on that account; and attempted to shew, that the sums of money alluded to, were *borrowed* by him of one *Julius Chapman,* for which he gave his notes. The court charged the jury thus : " This is an action on the written contract, in which the defendants promised to pay the plaintiff four dollars, fifty cents, or the customary freight, on his drawing the lumber out of the water, according to custom. It is agreed, that it was not drawn out. The question, then, arises upon the issue before you, whether the defendants prevented the plaintiff from performing the contract on his part, and drawing the lumber out of the water. If you find, that the defendants did so prevent the plaintiff from performing his contract, and drawing out the lumber, your verdict will be for the plaintiff, and you will find for him to recover of the defendants the whole sum contained in the contract, in damages ; otherwise, you will find for the defendants." The jury returned a verdict for the plaintiff ; and the defendants moved for a new trial, on the ground of a misdirection. The questions of law arising on such motion were reserved for the consideration and advice of the nine Judges.

*T. S. Williams* and *A. Smith,* in support of the motion, contended, 1. That this declaration was not on the written contract. It stated the plaintiff's carrying down the raft on freight ; the attachment by the defendants ; the written contract ; the plaintiff's attempt to perform ; the prevention by the defendants ; and then averred, that by reason of *these facts,* the defendants became liable to pay the plaintiff 1,200 dollars as freight, and *promised* to do so, when requested ; and concluded, by alleging a breach of this promise. The written contract was only one of the *train of facts,* which were stated by way of inducement. No breach of it was alleged ; and no consideration for it appeared, it being, by custom, the duty of the carrier to draw the lumber out of the water. The last promise was the only one put in issue by the pleadings. It was the *gist* of the action ; and ought to have been proved.

2. That the sum of 148 dollars, advanced to the plaintiff towards the freight, ought to have been deducted. The defendants were not liable, on any principle, for more freight than was due.

*Mitchell* and *Candee*, contra.

SWIFT, Ch. J.   The declaration is grounded on an express written contract, which was on good consideration, the drawing of the timber out of the river ; and the allegation that the defendants prevented him from doing it, is equivalent to a performance.   Whether the plaintiff has, in a technical manner, denied that the defendants have performed their contract, is a question not necessary to decide on this motion.

.The contract being express to pay customary freight, the defendants had no claim for any deduction, on account of freight paid by another person.   The charge of the court, then, was correct, on both points ; and a new trial ought not to be granted.

TRUMBULL and EDMOND, Js. were of the same opinion.

SMITH, J.   I think the court erred, in this case, in not submitting to the jury the claim which was made, that 148 dollars had been paid in advance.   This error was probably occasioned by considering the action as brought on the written contract ; which, in my judgment, was also incorrect.   I have rather viewed it as an action on the case, founded on all the facts, concluding in *assumpsit*.   In the first place, the contract is stated as made between the plaintiff and *Hyde Clark* and others in *Vermont*.   In the next place, the plaintiff states, that he proceeded with his lumber down the river, and towards *East-Haddam*, its place of destination, till it arrived at *Hartford*, when the defendants attached the lumber, and took it out of the plaintiff's possession.   The plaintiff then states, that these facts having taken place, the defendant promised the plaintiff, in writing, to pay the customary freight for transporting lumber from *Hartland* in *Vermont* to *East-Haddam*, on his drawing the lumber out of the water. He then proceeds to state what is such customary freight, and excuses himself for not drawing out the lumber, by alleging that he was prevented by the defendant.   Having proceeded thus historically, and with great minuteness, to state all the facts regarding the transaction, and among other things, the promise in writing, the declaration concludes in the following words : " And by reason of the premises, the defendants became liable to pay the plaintiff the sum of twelve

hundred dollars as freight, and for transporting said lumber as aforesaid ; and being so liable, afterwards, to wit, on or about the 10th day of *December,* 1816, assumed upon themselves, and faithfully promised the plaintiff to pay said sum, when they should be thereunto requested ; yet the defendants, their promise aforesaid not regarding, have never performed the same, though often requested and demanded ; to the plaintiff's damage," &c.

Having taken this view of the declaration, I would ask, whether the written promise is stated as forming the gist of the action ; or whether it is stated, among other facts, as making a part of the " premises," by reason of which the defendants became liable ; and, in this way, making a part of the consideration for the final promise ? We find in the declaration, no breach of the written promise alleged : it is merely stated, and left among the mass of facts from which the broad foundation is laid to conclude, that " by reason of the premises, the defendants became liable to pay the plaintiff 1,200 dollars ;" which is made a consideration for the final promise.

It is of no use to enquire, whether this is an action on an *express* or an *implied* promise ; because, whether it is one or the other, the final promise is the only one laid as the point of the action, and the only one of which any breach is assigned, and on which issue is joined by the plea of *non assumpsit.*

This has been treated by counsel, as being an action upon an express written contract, to pay a certain sum, as a reward for drawing lumber out of the water. But nothing can be more incorrect, than this view of the declaration, which states, " that by reason of the premises, the defendants became liable to pay 1,200 dollars as freight, and for transporting said lumber as aforesaid ;" and not for *drawing it out of the water.* Indeed, to my apprehension, the declaration has but one aspect, and proceeds throughout upon the ground of recovering that freight of the defendants, which *Clark* and others agreed originally to pay. This claim the plaintiff attempts to establish, as well by the fact that the defendants have taken the lumber out of his hands by their attachment, as by their written promise.

If I am correct in the view I have taken of the declaration, it will follow, that any payment, made by *Clark,* ought to go in mitigation of damages ; for it would be manifestly unjust

to permit the plaintiff to recover freight of the defendants, which he had already received of *Clark* and others.

It was insisted in argument, that the plaintiff ought to recover his whole freight of the defendants, and leave *Clark* and others to recover back the money they had paid. But I would never permit a man to recover money, to which he is not entitled, merely to lay a foundation to recover it back in another action. Nor do I see on what principles *Clark* and others could recover back money, which they have paid, in part performance of their contract, when the plaintiff has done all in his power to fulfil on his part, but was prevented, after having performed nearly all the service, by having the property taken out of his possession, by force of law. It appears to me to be a principle of universal application, that where two persons become independently liable for the same services, a payment by one, is a payment for both. This must be so; or the person performing the service will inevitably obtain his pay twice. In such case, they are in the nature of collateral security. In the present case, I consider the defendants as agreeing to pay the debt of *Clark* and others; to which they were induced, by the supposition, that the plaintiff had a lien on the lumber for his freight; and whether this opinion was correct, or not, the object undoubtedly was, to pay him what was justly due to him, and no more. Hence we find them agreeing to pay the same sum originally stipulated to be paid by *Clark* and others, and for the same services; considering the delivery at *Hartford*, and drawing out of the water, equal to the same thing at *East-Haddam.*

BRAINARD, J. was of the same opinion.

HOSMER, J. The defendants attached a raft of lumber, and took it into their possession. They, by a written agreement, promised the plaintiff to pay him at the rate of four dollars, and fifty cents, a thousand, or the customary freight on said lumber; which, it was admitted, amounted to the sum specified, on his drawing the raft from the water. The declaration states these facts, (the admission excepted,) and then sets forth performance on the plaintiff's part. It avers, that he drew out a part of the lumber, and was proceeding to draw out the residue, when the defendants forbade him, and

*Hartford,*
June, 1818.

Miller
*v.*
Ward.

would not suffer or permit him to do any thing more. This is equivalent to an actual fulfilment of the contract on his part. For, if he who is to be benefited by another's fulfilling his agreement, is the occasion why it is not carried into execution, the party bound to the performance, will be in the same condition as if the agreement had been literally fulfilled. (*Vid.* cases cited *Pow. on Con.* 417 to 420.) Assuming for the present, that a sufficient breach of the defendants' contract is laid in the declaration, the plaintiff's cause of action is complete. The declaration contains an express promise of the defendants, to pay the plaintiff a certain sum, for the performance of a specified act; the performance of that act, on the defendants' request; and a refusal to pay the stipulated hire. The legal sufficiency of the consideration admits of no dispute. Any thing, however trivial, done on the request of another, whereby the performer is subjected to a loss, or the other party derives a gain, is a valid consideration. (Cases cited in *Comyns* on *Con.* 13, 14.) The plaintiff's declaration, unnecessarily, and to no substantial purpose, after having averred the preceding facts, laid an implied contract, making the express engagement, and the performance of it by the plaintiff, the consideration of such promise. No proof was offered to evince any agreement, besides the express assumption comprised in the writing set forth. On this view of all the material facts in the case, it must be admitted, that the express promise, and the performance on the part of the plaintiff, were proved; and that there was no other promise made. Unquestionably, the law *implied* no agreement : *expressum facit cessare tacitum.* What, then, was the duty imposed on the court? To instruct the jury, as they did, that if they found the defendants prevented the plaintiff from performing his contract, by drawing out the lumber, they must render their verdict in his favour, for the full sum stipulated. To this charge I can discern no imaginable objection. It declared the law as applicable to all the facts proved, and stated a principle to which no objection has been, or can be, made.

It is said, that the declaration does not contain a sufficient allegation, shewing, that the contract was not performed by the defendants. Let it be admitted, that the plaintiff's declaration is deficient in not alleging a breach of the defendants' contract. No question on that point could arise at the circuit;

Hartford,
June, 1818.

Miller
v.
Ward.

nor is any presented by the motion. Under the issue of *non-assumpsit*, in an action on express promise, by our practice, which formerly was the correct practice of the *English* courts, no enquiry relative to payment, or performance, could be raised. *Ripley* v. *Fitch*, 1 *Root* 404. 1 *Chitty* 472. Still less can it be contended, that the jury were to enquire whether a breach of the promise had been duly laid. That enquiry formed no part of the issue on trial. It is a question arising on the face of the record, which a demurrer, or motion in arrest, is adapted to call into view. Before the jury, the legal enquiry was, whether the plaintiff had sustained the alleged promise ; not, whether the contract averred had been followed by the allegation of a sufficient breach. Accordingly, the motion on this subject is silent. Had the objection been duly made, it might, immediately, have been obviated, by an amendment. Before this court, it is, in general, clear, that no objection is competent, unless it has been the subject of adjudication. *Jones* v. *Fales*, 4 *Mass. Rep.* 254.

The money paid by *Hyde Clark* to the plaintiff, it is suggested, should have been deducted from the verdict. On what principle could this have been warranted ? The defendants had expressly promised to pay a definite sum for the work that was performed. They could have no right to the money of *Clark*, with whom they had no privity, nor appropriate to themselves the benefit of an advancement by a stranger, the object of which, their attachment had frustrated. *Clark* has a right to his own money ; and for it the plaintiff is accountable to him. What is entirely conclusive on this head, is, that by holding the defendants to the payment of the precise sum promised by them, they are only subjected to a reasonable law of their own making. If the contract had been to deliver to the plaintiff a horse, the horse must have been delivered ; and between that promise and this, as to the obligation incurred by non-performance, there is no imaginable difference. In my judgment, the charge by the court is conformable to law and justice ; and I discern no reason for granting a new trial.

GOULD, J. It is very apparent, I think, that the action is founded, not on the express written contract, but upon a promise, supposed by the pleader, to be implied, from the

facts alleged. This appears to me very evident, from the whole structure of the declaration. The pleader manifestly supposed, that the plaintiff's being *prevented,* by the defendants, from fully performing the special agreement, on his part, put an end to that contract ; or, at least, precluded him from recovering upon it. Hence it is, that he superadded the implied promise—which, if it were not intended, as the foundation of the action, there could have been no conceivable reason for inserting. The first promise, then, is laid, only as inducement, or as one of the special *facts,* from which, it was supposed, the law would raise the second. The court, it is true, is not bound to construe the declaration, in conformity to the views of the pleader : and if the elements of a good count could be found in the declaration, independently of the second promise ; that, as the case stands, might be considered as surplusage. But without that promise, the declaration is incomplete ; and to treat it as surplusage, would be to reject the *gist* of the action. What seems to me to be, alone, decisive of the question, is, that this second promise is not only the *last* one alleged, in the order of declaring ; but the *only* one, of which the breach assigned is predicated. Of the first there is no breach laid, in any form. I cannot, therefore, hesitate to consider the second, as the ground of the action. And as this was, confessedly, not an express undertaking ; and as the law certainly could not raise it, in the form in which it is laid, from the facts, previously stated ; the action was, in my opinion, wholly unsupported, by the evidence, and the direction to the jury, wrong.

The question made, as to the 148 dollars, which the plaintiff had received, it is not necessary for me, in this view of the case, to consider.

PETERS and CHAPMAN, Js. concurred in the opinion given by the Chief Justice.

New trial not to be granted.