## CHAMPION *against* HARTSHORNE.

*A.* and *B.* entered into an agreement in writing, but not under seal, whereby *B.* stipulated to perform the various duties of superintendent of the plaintiff's cotton manufactory, for the term of five months; and *A.*, on his part, stipulated to pay *B.* a certain sum. *B.* entered upon his duties in the manufactory under this agreement; and when about half the term had expired, he used insulting language to *A.*, and threatened him with personal violence; whereupon *A.* dismissed him from his employment, forbade him to enter the manufactory, and notified the workmen, that they were no longer under *B's* direction. *B.*, notwithstanding, entered, and endeavoured to persuade the workmen not to obey *A.*, but to work under *B.*, claiming a right so to do, by virtue of the agreement. In an action of trespass, brought by *A.* against *B.* for such entry, it was held, 1. that the agreement between the parties was something more than a mere licence, revocable at the pleasure of *A.*; 2. that *B.* having had, at no time, a right to enter the manufactory, except to perform the stipulated services, and *A.* having discharged *B.* from the performance of those services, as he might lawfully do, *B.* had no longer a right to enter; 3. that the right of *B.* to enter after he was dismissed, did not depend upon the cause of dismissal; for if it was without cause, *B.* had a right to demand his wages for the whole term; 4. that such right of *B.* to enter did not depend upon the actual payment of his wages; his legal right to enforce payment, if entitled to them, being for this purpose, equivalent to actual payment; and 5. that a breach of the agreement on the part of *B.*, was not necessary to constitute a sufficient cause of dismissal; but it might arise, in the absence of any such breach, from the insulting language and threats of personal violence, proved on the trial.

THIS was an action of trespass *quare clausum fregit;* tried at *Middletown, February* term, 1833, before *Daggett,* J.

The defendant, having pleaded the general issue, gave notice, that under this issue, he should give in evidence a contract, entered into between him and the plaintiff, under the hands of the parties, but not under seal, on the 14th of *November* 1831, by which the defendant stipulated to perform the various duties (specified in detail) of a superintendent of the plaintiff's cotton manufactory, from the date of the contract until the 1st of *April* 1832; and the plaintiff, on his part, stipulated to pay quarterly to the defendant at the rate of 1110 dollars *per annum;* and that the defendant, in pursuance of this contract, and for the purpose of discharging the duties

thereby imposed upon him, entered upon the plaintiff's close and into his manufactory, making no unnecessary disturbance there.

On the trial, the defendant justified the acts complained of under the contract set forth in his notice. Under this contract he went into the employment of the plaintiff, and continued therein until the 3d of *January* 1832; when, having used insulting language to the plaintiff, and having threatened him with personal violence, he was dismissed from his employment, and forbidden to enter the premises; and the workmen were notified, that they were no longer under the defendant's direction. Notwithstanding such dismissal and prohibition, the defendant entered, the next day, and told the workmen, that the plaintiff had no right to dismiss him, and requested them to work under him. The plaintiff then gave the defendant notice in writing, that he was dismissed. After this, *viz.* on the 5th of *January*, the defendant entered again, and again endeavoured to persuade the workmen not to obey the plaintiff, but to work under him. Upon these facts, the defendant claimed, that he had done only what the contract authorized him to do. The plaintiff, on the other hand, insisted, that the instrument under which the defendant entered, amounted only to a licence, and was revocable at the pleasure of the plaintiff; but he did not offer to submit to the court and jury the question whether the defendant had, by his language and acts, violated the contract on his part, so as to justify the plaintiff in refusing to permit him to enter the premises; but the plaintiff claimed, that he had a right to dismiss the defendant from his employment at his pleasure; and that if the defendant afterwards entered, contrary to the will of the plaintiff, he became a trespasser; and prayed the judge so to instruct the jury.

On these conflicting claims the judge instructed the jury, that the writing in question was more than a licence; that it was a contract, which gave the defendant a right to enter the manufactory, notwithstanding the plaintiff's dismissal; and that upon the admitted facts in the case, they must find a verdict in favour of the defendant.

The jury returned a verdict for the defendant accordingly; and the plaintiff moved for a new trial for a misdirection.

*Middlesex,*
*July, 1833.*

*Champion*
*v.*
*Hartshorne.*

*Sherman* and *Waite,* in support of the motion, remarked, that the defendant justified his entry, and this was his only defence; for he admitted the plaintiff's title and possession, and that he entered in defiance of his prohibition. If this contract justifies him, it must be on the ground either of *obligation* or of *right.* Either he was *obliged* to enter and discharge his undertaking, or he had a *right* to enter to secure his own interests.

The counsel then contended, 1. That the defendant was not *obliged* to enter, in order to exonerate himself from a breach of the contract. If the employer refuses the stipulated services, this dissolves the obligation. The plaintiff could never afterwards sue him for non-performance.

2. That the defendant's entry was not necessary to secure any *right* to himself under the contract. If dismissed without just cause, he might sue the plaintiff, and recover the same sum as if the whole service had been performed.

Both these propositions were expressly stated, by the supreme court of errors, in *Miller* v. *Ward* & al. 2 *Conn. Rep.* 494. 1 *Pow. Contr.* 418. The implied licence is revoked. He cannot enter; for he has neither *jus in re* nor *ad rem.* A man may dismiss his workman, gardener, steward, or other servant; and if the service has not been performed, at the time, the master can never claim any more, and the servant can demand as much, as if he had done the service. The contract is performed; and the wages are due. The servant cannot enter the coach, garden or farm, after the prohibition; "*if he does, he is a trespasser.*" So says *Littleton.* 18 *Edw.* 4. 8.

But, in this case, there was just ground of dismissal; not indeed, by reason of any breach of contract by the defendant; for the abuse offered to the plaintiff was not a breach of contract. He could not have sued the defendant on this contract, and recover damages *for a breach;* for the defendant had not stipulated not to insult the plaintiff or to threaten him with violence. But such conduct justified his dismissal, so that the defendant could not recover damages, if he were to sue. Although my coachman drives in the best manner, according to his stipulation; yet if he treats me with indignity, and I, for that reason, dismiss him, he is not only a trespasser, if he takes his seat and seizes the reins against my prohibition, but he can recover no damages for the dismissal.

*E. A. Bulkley*, contra, contended, 1. That the instrument under which the defendant entered, was not simply a licence, which is a bare permission or authority to do an act or acts, a mere excuse for what otherwise would be a trespass,—but a contract, in the general and proper sense of that term, having all the properties of one. *Cook* v. *Stearns*, 11 *Mass. Rep.* 533. 537. *Chitt. on Contr.* 4. *Pow. on Contr.* 8. 257. 1 *Swift's Dig.* 176.

2. That such contract gave the defendant authority to enter, so long as it subsisted. This is necessarily implied ; as without such authority, the contract could not be performed.

3. That a contract cannot be dissolved, without the mutual consent of the parties, unless the right to dissolve be secured by the terms of the contract, or unless it accrue to one party from the default of the other. If one party can rescind at pleasure, the other can ; and if both can, it has no binding force whatever. It would be futile to make a contract of this character. *Sullivan* v. *Mass. Mutual Fire Ins. Co.,* 2 *Mass. Rep.* 318. 326. *Whitney* v. *Brooklyn,* 5 *Conn. Rep.* 405. 412. *Chitt. on Contr.* 275. A contract cannot be rescinded, unless the parties can be placed in *statu quo ;* and if rescinded, must be so entirely. *Hunt* v. *Silk,* 5 *East* 409. *Winter* v. *Brockwell,* 8 *East* 308.

4. That from these principles it results, that a master cannot dismiss his servant without cause ; and so are the authorities. *Winston* v. *Linn,* 1 *Barn. & Cres.* 460. (8 *Serg. & Lowb.* 131.) *Warner* v. *Smith,* 6 *Conn. Rep.* 14. *Callo* v. *Brouncker,* 4 *Carr. & Payne,* 518. (19 *Serg. & Lowb.* 524.) 2 *Kent's Com.* 258. (2d ed.)

5. That in this case no sufficient cause is shewn.

BISSELL J. No question arises on the construction of the contract set forth in the defendant's notice, and by virtue of which he justifies his entry. It is a mere agreement for services, to be rendered by the one party, and to be compensated, by the other.

On the trial, the attention of the judge seems to have been drawn to the question, whether the agreement was any thing more than a mere *licence* from the plaintiff to the defendant, to enter the manufactory. And upon this question, the charge is undoubtedly correct. This agreement is something

*Middlesex,*
*July, 1833.*

*Champion*
*v.*
*Hartshorne.*

more than a licence. It is a contract, containing mutual stipulations between the parties.—But admitting this to be so, still the question arises, whether the remaining part of the charge can be vindicated.—Had the defendant a right to enter the manufactory, notwithstanding his dismissal? And were the jury rightly instructed, when told, that upon the facts admitted and proved, their verdict must be in favour of the defendant?

1. Suppose the dismissal of the defendant to have been without cause, as the charge obviously supposes, is his entry upon the premises justified?

It may here be remarked, that the contract under which the right of entry is claimed, is a mere contract for services to be rendered by the defendant, within a stipulated time, and for a stipulated price. He had no interest whatever, in the profits of the establishment. He had no interest in entering the manufactory, but for the purpose of entitling hims ..... wages *as a servant.* His obligations and his rights we procal, and correspondent.—He was under an obli to perform the services; he had a right to enter the man to enable him to perform them. That the plaintiff mig released him from the *obligation,* cannot be denied; for, su a party may waive a stipulation in his own favour, and for his own benefit. And if he discharge the *obligation,* does he not thereby take away the corresponding *right?* Suppose, then, that the defendant had not only been dismissed, but that his wages up to the time agreed upon, had been paid, according to the terms of the contract; under what pretence of right could he, afterwards, have entered the manufactory? True, his wages were not paid; but he was dismissed. The plaintiff had precluded himself from ever demanding the performance of any further service under the contract. *Wilbeam* v. *Ashton,* 1 *Campb.* 78. And not only so, but if the dismissal was without cause, he had given the defendant a right to demand the payment of his wages, as fully as though every stipulation in the contract had been performed on his part: "For if he who is to be benefited, by another's performing his agreement, is the occasion why it is not carried into execution, the party bound to the performance, will be in the same condition as if the agreement had been literally fulfilled." *Per Hosmer, J.,* in *Miller* v. *Ward,* 2 *Conn. Rep.* 494. See also

*Whitney* v. *Brooklyn,* 5 *Conn. Rep.* 405.   1 *Pow. on Contr.*
417. 420. and the cases there cited.

Now, can it make any difference, in point of principle,
whether the plaintiff had paid to the defendant his wages, or
whether he had given him a legal right to enforce the pay-
ment ?

The defendant, then, was under *no obligation* to enter upon
the premises.   From *that* he was discharged, by the act of the
plaintiff.   The entry was not required to assert, or give vali-
dity to, any legal claim ; nor to advance any legal remedy.
Why then should it have been made ?

The entry of one man upon the lands of another, without
his consent, is, *prima facie,* a trespass, and requires to be
justified.   And it is difficult to see upon what grounds a justi-
fication can be sustained, when the entry is demanded by no
[illegible] and attended by no possible advantage.

forc[illegible] law upon this subject I suppose to have been long since
this [illegible] and accordingly, we find it laid down, that " where
*Mass.* [illegible]nated, by indenture, to build a house of certain di-
405. 4[illegible], within a certain time, for ten pounds, and an action
scind[illegible] [illegible]ant was brought, for non-performance of the contract,
if [illegible]efendant pleaded, that he went, and was ready to have
built the house, and the plaintiff commanded him that he
should not build it ; by reason of which, he left it undone ;
and on demurrer, *Littleton* held this a good plea, *for if the
carpenter had come on to the plaintiff's premises, after this
command, the plaintiff might have had an action of trespass
against him for his entry ;* and therefore, the commandment
was a sufficient discharge for the carpenter."   1 *Pow. Contr.*
18.

It is, indeed, said, that the reason here given for the judg-
ment, is not the opinion of the court, but is the mere *dictum*
of *Littleton.*   Admitting this to be true, it will hardly be deni-
ed, that the authority of *Littleton* is entitled to great respect ;
and the more so, as the opinion is cited, with apparent appro-
bation ; and it is believed, that no opposing case or *dictum* is
to be found in any book of authority.

Again : It is insisted, that the plaintiff had not the power
to rescind this contract ; and *that* still being in force, the de-
fendant had a right to enter under it.

The premises may be admitted, while the conclusion is de-

nied. It is not claimed, that the contract either was, or could be rescinded, by the act of the plaintiff alone. Notwithstanding the dismissal of the defendant, the contract remained, and his remedy upon it was still open. But it does not therefore follow, that the right of entry remained. It does not follow, that where a servant is dismissed *without cause*, and without his consent, he has therefore the right to continue his employment, and to enter the master's house, in the face of his prohibition. Such I do not understand to be the law ; but that the master has, at all times, the power to dismiss his servant, making himself responsible for the consequences, when he dismisses without cause.

2. But admitting this view of the case to be incorrect, and that the defendant had good right to enter the manufactory, provided he were dismissed without cause ; still the enquiry arises, whether the case was properly submitted to the jury.

It is stated upon the motion, that the defendant used insulting language to the plaintiff, and threatened him with personal violence.

What the language was, or what were the threats, does not appear : and the question, whether they furnished a sufficient cause for the dismissal of the defendant, was not submitted to the consideration of the jury. It is, indeed, stated, that the plaintiff did not offer to submit the question, whether the insulting language and threats amounted to a violation of the defendant's contract. And the charge, manifestly, proceeds upon the ground, that they afforded no cause of dismission, unless the contract was thereby violated. This position, I think, cannot be sustained, either on the ground of reason or authority.

In *Atkin* v. *Acton*, 4 *Carr. & Payne*, 208. the plaintiff entered into the service of the defendant, under an agreement to serve him as clerk and traveller, at 80*l*. a year, and to live and board in the defendant's house. The plaintiff assaulted his employer's maid servant, with intent to ravish her. This was held to be good cause for his dismissal without notice ; and Lord *Tenterden* was of opinion, that a person dismissed, under such circumstances, was not entitled to wages, even for the time that he had served. And in *Callo* v. *Brouncker*, 4 *Carr. & Payne*, 518. it is laid down, that moral misconduct, pecuniary or otherwise, as well as wilful disobedience, or ha-

*Middlesex,*
July, 1833.

Champion
*v.*
Hartshorne.

bitual neglect, is good cause for the dismissal of a servant. Indeed, is it to be endured, that a master may not rid himself of an impertinent or immoral servant, unless it can be shown, that some stipulation in his contract has been violated? A man 'is retained as the cashier of a bank, for a specified time. He discharges his duties promptly, and performs that which he is bound to perform, by the terms of his contract. But he is known to be a gambler in lotteries, or in the stocks,—and has acquired a character, which justly deprives him of all confidence. May not a board of directors exclude such a man from their banking-house and their vaults?—And yet, upon the principle contained in the charge, I see not how this can be done.

I think the charge cannot be vindicated;—and would advise a new trial.

PETERS, WILLIAMS and CHURCH, Js., were of the same opinion.

DAGGETT, Ch. J.  I think, notwithstanding the opinion of the court, that the charge was entirely correct.

1. This is not an action against the defendant for endeavouring to entice or seduce his workmen from his employment; but an action of trespass for an unlawful entry on his premises. The entry must have been without, or against the permission of the plaintiff. On this point there can be no doubt.

2. It is very clear, that by virtue of this contract between the plaintiff and defendant, he, the defendant, had a right to enter and occupy the premises till the contract had expired. His original entry, then, could not have been unlawful. The contract necessarily gave the defendant a right to enter; for by the terms of it, he was to superintend it and its concerns. There was a full implication, then, of an authority to enter and remain. This doctrine is too clear to admit of doubt. He was hired for the express purpose of being and remaining there in fulfilment of his contract.

If the plaintiff had leased to the defendant a chamber in a dwelling-house, he would have given him all the necessary means of access to it.—If he had sold to him ten acres of land in the midst of his farm, he would, by implication, have granted to him a right of way to it. Then, surely, when he has bound himself, by contract, to pay the defendant for superin-

tending his manufacturing establishment, he has given to him full authority to enter and occupy during the continuance of the contract.

3. It is insisted, that the plaintiff had a right, at any time, to violate the contract, on his part, and thereby obtain to himself a right of action against the defendant. This I cannot assent to ; and if it be so, it is the only case within my knowledge, in which it can be done. This must be shown to be the condition of the parties ; for it will not be forgotten, that the motion finds, that the plaintiff did not propose to submit the question to the court and jury, whether the defendant's words or actions were such as to justify the plaintiff in considering the contract violated on the part of the defendant ; but he insisted on his right to forbid him to enter, at pleasure, that is, without assigning any reason for it ; and then to maintain trespass for entering. This was precisely what the plaintiff contended for, and which, as I understand it, the court sanctions. And in support of this doctrine, the following positions are advanced. 1. That when he who is to be benefitted, by another's fulfilling his contract or agreement, is the occasion why it is not carried into execution, the contract thereby is entirely dissolved, and the party bound discharged from his obligation. This position is, beyond doubt, in the main, sound law. 1 *Powell on Contracts* 417. *Miller* v. *Ward,* 2 *Conn. Rep.* 494. *Whitney* v. *Brooklyn,* 5 *Conn. Rep.* 405. This position is illustrated in *Powell* 420. by the following case. A carpenter covenanted to build another a house upon his land for 10*l.*, and came prepared so to do, but was ordered by him to desist. The carpenter, after such command to desist, might have maintained an action for the 10*l.* This is a perfect illustration of the rule, and it is in precise accordance with my ideas. The carpenter could recover the 10*l.* covenanted to be paid to him, because *the other would not permit him to enter on his premises to fulfil his contract ;* and he was, therefore, the cause of his not fulfilling it :—he prevented him.—But is it so as *Powell* says, in the latter part of the position quoted—" The contract or agreement is thereby *entirely dissolved ?*" I can understand why the contractor to build was *discharged,* to wit, by the refusal of him for whom he was to build, to permit him to enter for the purpose ; but I am at loss to see how the contract *was dissolved as to the*

*other party, who violated it ;* and especially, when the same learned author (Mr. *Powell*) expressly says, (*p.* 420.) what is undoubtedly true : " The carpenter, after such command to desist, might have maintained an action for the 10*l.*" Shall he be intended to have said, that the contract or agreement was thereby *entirely dissolved ;* or shall it be intended that he meant what was said by our own court of errors, in the cases cited of *Miller* v. *Ward* and *Whitney* v. *Brooklyn*, that the party preventing the performance had discharged the other, who was ready and offered to perform ? The latter, I presume, was what Mr. *Powell* meant to have said, rather than to have asserted so bold a principle as that one party can rescind a contract ; or that an action can be sustained upon a contract entirely dissolved.

But, it is further insisted, that *Powell*, in commenting on this principle, cites (*pp.* 417, 18.) the very case from the *Year Books*, 18 *Edward* 4. where the carpenter was sued on his covenant for not building, to which he pleaded, that he went and was ready to have built the house, and that the plaintiff commanded him that he should not build it, by reason of which he left it undone. *Littleton* held this a good plea ; and rightly so. This action was brought by the man who had violated his contract, by refusing to let the carpenter build ; and like the cases before cited, the court laid down the law, that he could not recover. This is undoubted law, as I have before admitted ; and if the carpenter had brought the action, he would have recovered, as before shown.

But this is read from *Powell*, for the purpose of introducing what *Littleton* said, in delivering his opinion : " If the defendant had come on to the plaintiff's premises, after this command, the plaintiff might have had an action of trespass against him for his entry." On this case, I have two remarks to make. First, it is not like the case in judgment. There, the carpenter had never entered, in performance of his contract. He had come and offered to build ; and the plaintiff forbade him. Here, the defendant was actually occupying under a strong and irresistible implied authority from the plaintiff. Could the plaintiff, then, by a violation of the contract, on his part, make the defendant a trespasser ?

Again, secondly, by looking into this case in the *Year Books,* as quoted, and also in *Bro. Abr. tit.* Covenant, *pl.* 31. *fol.* 188.

it appears, that there were three judges, *Littleton*, *Choke* and *Vavisour*. They all concurred in the decision ; but no one of them suggested any thing about the liability of the party in trespass, except *Littleton*. In his opinion, it was only put by way of illustration, and clearly is nothing but an *obiter dictum*. I should hope, before it be established as law, that a right to maintain an action of trespass can be gained, by a violation of a contract, some case would have been found and read to the court, or some elementary principle shown in support of such a doctrine.

3. The plaintiff should have, at least, offered to pay the defendant the proportion of his salary, due from *November* to *January*, and tendered it too, before he could insist on dismissing him from his employment, and forbidding him to enter, and on maintaining trespass against him, when, as the case finds, he had not violated the contract on his part. It appears to me, such a principle is opposed to all the doctrine of contracts. It enables one party to rescind an agreement, at pleasure ; and thereby give to himself a right of action.

4. There is a rule of this court, that the point decided by the court below, shall appear on the motion, or in a writ of error ; and that only shall be regarded. 6 *Conn. Rep.* 327. Now, the only point made in the superior court, as appears on the case presented, was, whether this agreement was a mere license, and revocable at pleasure.—That point is abandoned, now, in argument ; and the case put up upon a totally different point. I apprehend such a practice will not promote a correct administration of justice ; and that the rules adopted should be adhered to, or abandoned.

I am, therefore, not inclined to grant a new trial.

New trial to be granted.