THE COUNTY OF CHRISTIAN, Appellant, *v.* JACOB OVERHOLT *et al.*, Appellees.

### APPEAL FROM MACON.

A. contracted to build a house for B., to be paid for in installments: *Held*, That on the non-payment of one of these installments, when due, A. could not abandon the contract and recover the profits he might have made by completing the building, where such payment was not expressly made a condition precedent to the fullfilling of the contract by A.

In such case A. cannot recover for prospective profits, unless he is absolutely prohibited, by some act or omission of B., from completing his part of the contract.

ASSUMPSIT, by plaintiff below, on a written contract in relation to building a court house. Plea, *non-assumpsit*, with notice that plaintiff did not perform; and a second plea that plaintiff did not perform. The bill of exceptions is in the words and figures following:

Be it remembered, that on the trial of this cause, the plaintiffs gave, in evidence, the following contract and specifications, to wit: "Article of agreement made and entered into this 3d day of February, A. D. 1854, by and between Jacob Overholt and David F. Squier, of Christian county, of the first part, and Horatio M. Vandever, Joseph H. Clark and John Barnes, judge and associate justices of the county court within and for the County of Christian, and State of Illinois, for and in behalf of the said county, of the second part, witnesseth, that the said Overholt and Squier, of the first part, undertake and agree, on their part, to build a court house, on the public square, in the town of Taylorville, in the County of Christian, where the present court house now stands, and furnish all the materials therefor, according to the plan and specifications now on file in the office of the clerk of the county court of said county, with the exceptions hereinafter mentioned; and it is expressly agreed by the said parties, that all the materials shall be of the best quality, and the work executed in the very best manner and the approved modern style, coming up fully to the said plan and specifications; the stone work to be equal in quality and execution to the stone work in the court house in the city of Springfield, Illinois, and the brick equal in quality to those in the court house in Hillsborough, Illinois. The shingles of the roof are to be laid in paint of white lead, in a good, workmanlike manner. The partition walls are to be of brick, except when the stairs may interfere. The walls on each side of the hall, in first story, and the two north partition walls, are to be thirteen inches

thick. The other partition walls are both nine inches, above and below. The outside walls of the building are to be painted with one coat of good paint of red lead, one coat of vermilion, and neatly penciled. The plan of the court room is also to be altered so as to have the lawyers' bar to run straight with the dotted lines, as per plan, and the lawyers' table omitted. The clerk's table is to correspond with the judge's bench. The jury benches are to be raised as near in the proportion of the auditors' benches as can be, without obstructing the windows. The plastering on the side walls to be on the brick, but in other respects according to plan and specifications. Now, it is expressly agreed between the said parties, that the house is to be fully completed in every particular, and it is intended that the plan and specifications and this contract shall specify everything necessary to such completion. Yet if it should hereafter appear that there is anything omitted that is necessary to such completion, the said Overholt and Squier agree to do the same. The house is to be fully completed and delivered to the said county court on or before the first day of December, A. D. 1855.

"And the said party of the second part, for and on behalf of the said county, agree to pay the said Overholt and Squier the sum of fifteen thousand dollars, out of the treasury of the said county, at the time and in the manner following, to wit: Two thousand dollars in cash, on or before the 20th of March next. One thousand dollars bond when the foundation of said house is laid and stone work completed; one thousand dollars bond when the walls of the first story are up; and four thousand dollars bond when the walls are up and the roof fully completed; and when the house is fully inclosed, a bond for three thousand five hundred dollars, payable one year from the date thereof; and when the house is fully completed in every respect, and received by the county court, a bond for the like sum of three thousand and five hundred dollars, payable two years from the date thereof. Said bonds are all to be drawn for and on behalf of said county in favor of said parties of the first part, and delivered to them at the time above specified, and are to draw six per cent. interest from the date thereof; and the said party of the second part undertake and agree, for and on behalf of said county, that three thousand dollars of said bonds shall be cashed at the treasury of said county on or before the 20th day of March, 1855, provided said bonds shall be issued to that amount, and the same shall thereafter be cashed as presented, and issued to that amount.

"The foundation of the partition walls shall be of stone, as specified in plan and specifications.

" In testimony whereof, the said parties hereunto set their hands and seals, in duplicate, the day and year first above written.

| | |
|---|---|
| J. OVERHOLT, | [SEAL.] |
| D. F. SQUIER, | [SEAL.] |
| H. M. VANDEVER, | |
| *Judge County Court,* | [SEAL.] |
| JOHN BARNES, | [SEAL.] |
| J. H. CLARK." | [SEAL.] |

" It is understood by the parties that vault and safes are no part of the building of the court house.

| | |
|---|---|
| H. M. VANDEVER, | |
| *Judge County Court,* | [SEAL.] |
| JOHN BARNES, | [SEAL.] |
| J. H. CLARK," | [SEAL.] |

The plaintiffs claimed, July 25th, 1853, to have completed the foundation and stone work of the court house, having placed the foundations of the partition walls not three feet below the surface, but very near the surface; sinking them only from five to ten inches in some places; and thereupon claimed the one thousand dollar bond, which, by the contract, was to be issued on the completion of that part of the contract. Vandever, a member of the county court (the court not being in session), insisted that that part of the work was not completed according to the contract, because the foundations of the partition walls were not placed three feet beneath the surface, and for this reason refused to have the bond issued. Plaintiffs wished Vandever to have the court called to issue the order or bond, but it was not done. Plaintiffs said they needed the money to pay hands. Vandever said the plaintiffs had the money in their own hands, and could use it, but the bond should not be issued unless the foundations of the middle walls should be made according to the contract; and that the work should not be received as it was. The plaintiffs dropped this job and never did any more.

There was no other evidence tending to show the defendant hindered or prevented the plaintiffs from completing the job. The plaintiffs proved by one architect and active carpenter, and three retired carpenters, that, in their construction of the contract, specifications and plans, the work was done according to the contract. The defendant proved, by one active architect and builder, and four active carpenters, that, according to their construction of the contract, specifications and plans, the work was not done according to the contract. The defendant also proved that, after the contract was executed, the plaintiffs

15

anxiously and repeatedly entreated the defendant to release them from putting the middle foundations three feet deep, without denying their obligation to do so.

On this part of the case the defendant asked the court to instruct the jury as follows, to wit:

" That even if the foundation and stone work was completed according to the true meaning of the contract, still the refusal of Vandever to acknowledge that that part of the work was so completed, and his consequent refusal to issue the thousand dollar bond, furnished no legal excuse for the plaintiffs' stopping the job; and the plaintiffs are not, under the evidence in this case, entitled to recover anything for supposed profits they might have made by finishing the job."

Which the court refused to give, and to which refusal the defendant then and there excepted. There was no evidence, other than as above stated, tending to show that defendant hindered or prevented the plaintiffs from completing the job, and none, than as above, tending to show that the contract was abandoned by the mutual consent of the parties.

The foregoing is all the evidence necessary to present the points.

The jury found for the plaintiffs.

The defendant moved for a new trial, on the grounds, first, that the court refused a proper instruction; and, secondly, because the verdict was contrary to law and evidence; the plaintiffs never having completed the contract, and having given no evidence of an abandonment of it by mutual consent, or of any legal excuse for their discontinuing the job without the consent of the defendant.

The court, EMERSON, Judge, presiding, overruled the motion, and rendered judgment on the verdict; to which overruling and judgment the defendant then and there excepted, and now prays that his bill of exceptions, be signed, sealed and made part of the record of this cause, which is accordingly done.

The County of Christian appeals to this court, and assigns for error, that the court below erred in overruling the demurrer to the declaration; in sustaining the demurrer to the plea; in refusing a proper instruction; in overruling the motion for a new trial; and in rendering judgment for the plaintiffs below.

S. T. LOGAN and A. LINCOLN, for Plaintiff in Error.

STUART and EDWARDS, for Defendants in Error.

CATON, J. · The declaration in this case is in assumpsit. The first count is on an agreement which is set out in *hæc verba.*

This agreement provides that the plaintiffs below should, within a certain time, build a court house for the county, according to certain plans and specifications referred to. By the agreement, the county undertook to pay the plaintiffs two thousand dollars on a day named, and to give its bond for one thousand dollars when the foundations should be laid and the stone work done, and then the balance of the payments, amounting to $15,000, are specified.

The second count is on a similar agreement, which is set out in substance only. Then follow the common counts.

The first two counts aver that the foundations were up and the stone work completed, but that the defendant refused to accept the work under the contract, and pay the county bond as stipulated. On the trial, the plaintiffs introduced, in evidence, the agreement declared on, and proved that they had completed the foundations and stone work, according to the terms of the agreement, as the jury found; and that the county judge refused to accept the work, alleging that it was not done as required by the contract, and refused to deliver the bond; and rested. Among other things, the defendant below asked the court to instruct the jury, "That the refusal of the county judge to accept the work and issue the bond, did not authorize the plaintiffs to abandon the contract, and recover such profits as they might have made had they completed the work." This instruction the court refused to give, to which the defendant excepted, and this presents the only question which we are called upon to decide in this cause. This is substantially the same question as that decided in *Palm and Robertson* v. *The Ohio and Miss. R. R. Co.*, ante p. 217. And if there be any difference, it is in favor of that case. The plaintiffs could only recover for prospective profits where they have been *prevented* from going on, either by some affirmative act of the defendant, as by being ordered to desist from further work, or by the omission to perform some condition precedent to the further prosecution, as to furnish or do something necessary to its further progress. As shown in the case referred to, payment of installments of the compensation money will not be held to be such a condition precedent, at least, unless it is so made by the express and positive provisions of the agreement or contract; and the payment of this bond must be considered in the same light. Indeed, in this case, the undertakings for the payments of the price of the work are more independent in their character than were those in the case of *Palm and Robertson*, and the agreement to build and complete the court house seems to be quite independent of the payment of the money; and the agreement to pay the first two thousand dollars, which was to be paid on a day specified, is not made

McConnel *v.* The Delaware M. S. Ins. Co. et al.

to depend in any way upon the progress of the work; but the county obligated itself to pay it at all events on that day, as much so as if it had been put in the form of a note or bond. The next payment, which is the one about which the dispute arose, was dependent upon the completion of certain portions of the work, but it was dependent upon that alone; and when that was performed, it ceased to be dependent, and occupied the same independent position as the former, save only the necessity of the proof that the condition had been performed. Then it became a simple money demand, or, rather, a demand for the $1,000 bond, upon the refusal to deliver which a cause of action at once arose in favor of the plaintiffs for its value. It may be that its non-payment might serve as an excuse for the abandonment of the work, had the county sued the plaintiffs for not completing the house; but if so, it would be upon the ground that the agreement had been rescinded by the mutual consent of all parties.

The instruction should have been given, and the judgment must be reversed and the cause remanded.

*Judgment reversed.*