## GEORGE M. BLANCHARD *vs.* INHABITANTS OF BLACKSTONE.

A contract, purporting to be by the town of B. for the building of a lockup for its use, signed by H. M. and W. T., "selectmen of B.," with a seal opposite the signature of each, H. M. and W. T. being authorized to contract on behalf of the town, is the contract of the town.

Evidence that an agreement was signed by the parties in the scrivener's office, and left with him for the purpose of having a duplicate made and sent to one of the parties, will warrant a jury in finding a delivery to such party; and, in an action by him thereon, no exception lies to instructions to the jury that, if the parties did or said anything with the understanding that it should operate as a delivery, it would be sufficient; that, if they met, not knowing that delivery was necessary, and did the same acts, not intending that they should operate as a delivery, it would not be a good delivery; and that it was a presumption of law that the parties knew what the law was and that a delivery was necessary.

One who has contracted with a town for the erection of a building within a certain time may recover damages for its unreasonable omission to fix the site of the building, under a declaration alleging that it hindered him in the performance of the contract.

A vote of a town, authorizing the selectmen to erect a building for its use, authorizes them to select the site; and declarations of the selectmen, or one of them, concerning the building and its site, made to a contractor for the building, and to his agent, are competent evidence against the town; but not declarations of a like nature, to the same person, made by a member of a committee appointed to examine into the expediency of erecting the building and to report to the town.

CONTRACT on a written agreement for building a lockup for the defendants. The declaration alleged the making of the contract, and that the plaintiff was ready to perform the same, but that the defendants hindered him.

At the trial in the superior court, before *Reed*, J., the defendants produced, at the request of the plaintiff, the instrument declared on, but insisted that it was not a contract binding on the defendants. The instrument was as follows:

"Agreement made the 30th day of November 1867, between George M. Blanchard of the one part and the Inhabitants of the Town of Blackstone of the other part, Witnesseth: That said Blanchard shall furnish the material and build all the stone work for a lockup for said Town of Blackstone, of good solid granite, of the following dimensions [setting them forth] and to complete said work on or about June 1, 1868. That said Inhabitants of said Town of Blackstone, in consideration of said work and materials furnished and performed as aforesaid, agree to pay the said Blanchard the sum of one thousand five hundred and thirty-three dollars, and twenty-five dollars additional on account of foundation stone and work. Witness our hands and seals the day and year first above written.

    " George M. Blanchard   [seal]
    " Henry K. Merrifield ⎱ Selectmen of [seal]
    " Welcome A. Thayer ⎰  Blackstone [seal]
" Signed, sealed and delivered in
  presence of Silas A. Burgess."

There was evidence tending to show that this instrument was drawn by Burgess, signed in his office, and left with him for the purpose of drawing a duplicate to be signed and then sent to the plaintiff; and that the plaintiff did not take the paper after the selectmen had signed it; that the selectmen of the town, who were Merrifield and Thayer and John Benson, had been by a vote of the town, passed June 1, 1867, " authorized to erect a suitable and convenient lockup for the use of the town; " that in March 1868 a new board of selectmen was chosen, of which George E. Bullard was chairman; and that on April 6, 1868, a committee, consisting of Estus Lamb and two others, were

chosen by the town " to examine into the expediency of moving the town-house down to the village, with the view of erecting thereunder a lockup for the use of the town, and report their doings at some future meeting." The plaintiff was allowed to testify, against the objection of the defendants, that in March 1868 he notified Bullard that he was ready to proceed with his contract, and Bullard told him not to do anything more until further orders, as the town could not get a place upon which to build the lockup, and further told him that they were not going to build such a lockup as they had contracted for, and thought of building one under the town-house; that the first notice he got was through his father from Bullard; and that afterwards Lamb told him that they were not going to build the lockup named in the contract. The plaintiff's father testified that Bullard told him that he wanted the plaintiff to know that they had given up building the lockup.

The judge gave to the jury the following instructions: " The first question is, whether there is any valid written contract. To be such, the instrument must have been delivered, and in determining whether there was a delivery, you must look at the whole evidence in the case. The town authorized the selectmen to erect a lockup. That would authorize the selectmen to contract. They might make their contract either verbally, by simple writing, or under seal. This is enough to bind the town if delivered. To constitute a delivery, it is not necessary there should be any set form of words, or particular act done. If the parties do anything or say anything with the understanding that it should operate as a delivery, that would do. If they should meet, not knowing that delivery was necessary, and do the same acts, not intending that they should operate as a delivery, it would not be a good delivery. There is no express evidence here that they knew that a delivery was necessary. But it is the presumption of law that they knew what the law was, and knew that a delivery was necessary. No particular place was necessary. If they go off and leave it on the table, if they understand that is enough to make a delivery, that will do. If it is put into the hands of a third person to do any act,

as to carry to the registry of deeds, and understood that that shall operate as a delivery, that will do. In determining this question, you will look at the conduct of the parties and see whether they acted afterwards as if there was any subsisting contract between them.

"If you find a delivery, then you will inquire if there was any hindering. The contract required the plaintiff to finish the building some time in June. The contract does not fix any place. No place being mentioned, it was the duty of the town to furnish a place. To constitute a hindering, you must find he was prevented by some act or failure to act on the part of the town. If you find there was no place pointed out, and that was the reason he did not go on, that would be a hindering. If you find the plaintiff delayed because he was talking with officers of the town, and hoped to get a new contract, that would not render the town liable.

"If one selectman, undertaking to act for the board, did anything, the jury may consider his act as the act of the board."

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*G. F. Hoar*, for the defendants, to the point that the contract declared on was not the deed of the defendants, cited *Brinley* v. *Mann*, 2 Cush. 337; *Berkeley* v. *Hardy*, 5 B. & C. 355; *Combes's case*, 9 Co. 76; *Fullam* v. *West Brookfield*, 9 Allen, 1; *Elwell* v. *Shaw*, 16 Mass. 42; 1 Am. Lead. Cas. (4th ed.) 596; and to the point that the instrument declared on was never delivered to the plaintiff, cited *Mills* v. *Gore*, 20 Pick. 28; *Maynard* v. *Maynard*, 10 Mass. 456; *Parker* v. *Hill*, 8 Met. 447; *Merriam* v. *Leonard*, 6 Cush. 151; *Powers* v. *Russell*, 13 Pick. 69; *Parker* v. *Parker*, 1 Gray, 409.

*G. F. Verry*, for the plaintiff.

GRAY, J. 1. The agreement declared on purports throughout the body of it to be the agreement of the town of Blackstone and not the personal contract of the selectmen. The selectmen were authorized by vote of the town to make the agreement in behalf of the town. The signature was sufficient in form to render this agreement binding on the town as a simple contract

The agreement was not of a nature which required a seal. It is therefore unnecessary to inquire whether either of the seals affixed to it could be deemed the seal of the town ; for, if not the deed of the town, it is certainly neither the deed nor the simple contract of the agent; if it acquires no validity, it certainly loses none, by the affixing of the seals; and, if the seals have no effect, they may be disregarded, and the agreement held to bind the town as a simple contract. *Sherman* v. *Fitch*, 98 Mass. 59.

2. There was evidence tending to show that the agreement was written and signed on behalf of both parties in an attorney's office, and, after being thus completed, was left with him for the purpose of having a duplicate made and sent to the plaintiff. This was sufficient evidence to warrant the jury in finding a delivery of the agreement; and it was submitted to them with proper instructions. Anything done or said by the parties, with the understanding that it shall operate as a delivery, will have the effect intended. Leaving the instrument on the table, or in the hands of a third person, both parties understanding that it shall operate as a delivery, is sufficient, even in the case of a deed. Shep. Touch. 58. *Foster* v. *Mansfield*, 3 Met. 412. *Shaw* v. *Hayward*, 7 Cush. 170. *Kidner* v. *Keith*, 15 C. B. (N. S.) 35. *Parmelee* v. *Simpson*, 5 Wallace, 81, 86. The presumption is that the parties knew that a delivery was required by law to give effect to the agreement. This presumption was not stated to the jury as conclusive; but they were expressly told that if the parties " should meet, not knowing that delivery was necessary, and do the same acts, not intending that they should operate as a delivery, it would not be a good delivery."

3. The agreement did not fix the spot upon which the building was to be erected. It was therefore the duty of the town to furnish a place. If the town unreasonably omitted to perform this duty, it was as much a hindering and preventing of the performance of the agreement by the plaintiff, as if the town had expressly refused to select a place, or had done any other affirmative act to interrupt his performance of the agreement.

4. The vote authorizing the selectmen to erect the building for the use of the town necessarily involved an authority to

select a place for the building, as well as to make a contract for its erection. The declarations of the chairman of the selectmen, in conversation with the contractor, or with his father as his agent, after the making of such a contract, were therefore rightly admitted in evidence against the town, as admissions of an agent while negotiating about the contract and within the scope of his agency. *Morse* v. *Connecticut River Railroad Co.* 6 Gray, 150. *Burgess* v. *Wareham,* 7 Gray, 347. As applied to these declarations, which seem to have been the only acts of one selectman of which there was any evidence, the instruction that " if one selectman, undertaking to act for the board, did anything, the jury may consider his act as the act of the board," would seem to afford no ground of exception.

5. But the declarations of Lamb were improperly admitted, because the authority of the committee of which he was a member was limited, by the terms of the vote appointing them, to examining into the expediency of erecting the building and reporting their doings at a future meeting of the town. *Wheeler* v. *Framingham,* 12 Cush. 287. As we cannot know that the jury were not influenced by this evidence in finding a verdict for the plaintiff, upon this single point the

*Exceptions are sustained.*