RUFUS COOK *vs.* JAMES GRAY & others.

Suffolk. March 9, 1881; March 7. — June 26, 1882.

A number of persons associated themselves together for the purchase of several tracts of upland and flats situated on the sea-shore, for the purpose of improvement and subsequent sales, and took a deed of the premises running to three of their number as trustees, and containing a detailed statement in fifteen articles of the trusts upon which the premises should be held. In these articles, the names of the purchasers and their respective interests were mentioned. It was then provided that the "trustees shall and may pay all lawful taxes and assessments thereon; represent the parties interested in all suits and legal proceedings relating to the premises in any court, and commence the same when necessary; make and execute all necessary agreements relating to said granted premises; employ counsel, and do all acts and things, and pay out all sums of money necessary and proper in the due execution and management of said property; and, in particular, may provide for proper drainage, and may determine all questions relative to the proper laying out of streets and ways, or building-lots, subject to the instruction hereinafter provided for." A subsequent article provided that the interest of the purchasers should be divided into sixty thousand transferable shares of the nominal value of a certain sum each; and that the beneficiaries should be styled "The B. Company." Another article provided

that, in case the trustees should find it necessary to raise and expend money before they should receive sufficient funds from sales, they should have authority to collect all necessary sums by assessment upon the shareholders of not more than two dollars per share; with authority to make sales of shares for non-payment of assessments. The last article was as follows: "Said trustees shall not, in behalf of the shareholders, incur liabilities which will not be covered by said assessment of two dollars per share and receipts from sale of company property." *Held*, that, by the true construction of the articles, the trustees were authorized to incur liabilities on behalf of the shareholders to the amount of at least one hundred and twenty thousand dollars.

Three persons holding land as trustees of an association composed of themselves and several other persons, called "The B. Company," entered into two contracts with the plaintiff, which, by the articles of the trust, they were authorized to make on behalf of the shareholders. Both of these contracts stated on their face that they were made by the trustees "as trustees of the B. Company;" and were both signed by these persons "as trustees" of the same company. By the first contract, the plaintiff was to construct a wharf "for said company on their land," on the line of a dock or canal "to be excavated for said company;" and "payments shall be made" at stated times. The second contract recited that the plaintiff agreed to construct a canal or dock "for said company on the company's land;" and the provision as to payments was substantially like that in the first contract. *Held*, that it was intended by these contracts to bind the company, and not the trustees personally, and that they were sufficient in form for that purpose; and that the addition of seals, being unnecessary, might be disregarded as surplusage.

If a person, who performs work for another under a special contract and is paid in part only for such work, is justified in abandoning the contract, he may recover the value of his work on a *quantum meruit*.

CONTRACT upon an account annexed for work and labor. Trial in the Superior Court, without a jury, before *Dewey*, J., who found for the plaintiff, and reported the case for the consideration of this court; such judgment to be entered as the court might determine. The facts appear in the opinion.

The case was argued at the bar in March 1881, and was afterwards submitted on briefs to all the judges.

*J. H. Bradley, I. S. Morse, A. Cottrell, J. F. Colby, C. Q. Tirrell & T. H. Wakefield*, for the several defendants.

*G. W. Park*, for the plaintiff.

C. ALLEN, J. The trustees were authorized by the articles contained in the deed of trust to bind the shareholders by contracts like these entered into with the plaintiff. It appears that a considerable number of persons associated themselves together for the purchase of several tracts of upland and flats situated on the sea-shore, for the purpose of improvement and subsequent sales, and took a deed of the premises running to three of their

number as trustees, and containing a detailed statement, in fifteen articles, of the trusts upon which the premises should be held. In these articles, the names of the purchasers and their respective interests were mentioned; it was then provided that the "trustees shall and may pay all lawful taxes and assessments thereon; represent the parties interested in all suits and legal proceedings relating to the premises in any court, and commence the same when necessary; . . . . make and execute all necessary agreements relating to said granted premises; employ counsel, and do all acts and things, and pay out all sums of money necessary and proper in the due execution and management of said property; . . . . and in particular may provide for proper drainage, and may determine all questions relative to the proper laying out of streets and ways, or building-lots, subject to the instruction hereinafter provided for." A subsequent article provided that the interest of the purchasers should be divided into sixty thousand transferable shares, of the nominal value of twenty dollars each, and that the beneficiaries should be styled " The Boston Land and Wharf Improvement Company." Article 13 provided that, in case the trustees should find it necessary to raise and expend money before they should receive sufficient funds from sales, they should have authority to collect all necessary sums by assessment upon the shareholders of not more than two dollars per share; with authority to make sales of shares for non-payment of assessments. Article 15 was as follows: " Said trustees shall not, on behalf of the shareholders, incur liabilities which will not be covered by said assessment of two dollars per share, and receipts from sale of company property."

It thus appears that it was contemplated that the trustees should and must incur and pay certain expenses, not only for taxes and counsel fees, but in "the due execution and management of said property;" that in particular they might provide for proper drainage, and determine as to the proper laying out of streets, &c. Sales of the premises in parcels were obviously contemplated. Article 15, by a direct implication, authorizes the trustees, on behalf of the shareholders, to incur liabilities which would be covered by an assessment of two dollars per share upon all of the shares, and by the receipts from sales

of the company's property. These assessments would amount in all to the sum of $120,000. There is no way in which it could be determined in advance how much money would be received from sales, and therefore the articles do not furnish the means by which any one could tell beforehand the exact extent of the authority intended to be conferred upon the trustees in this particular. There is no provision in the articles to the effect that the shareholders shall not be liable to creditors, who may in good faith have given credit to the company upon contracts made by the trustees, for an amount even in excess of the above-mentioned limitation upon their authority; and in view of the fact that the limitation of what will be covered by receipts from sale of company property is in its nature not capable of definite ascertainment at the time when it is contemplated that the liabilities will be incurred, there is room for the argument, at least, that Article 15 is to be considered as merely a direction to the trustees, and an expression of the understanding which the shareholders had among themselves, but that it was not intended to have the effect of exempting the shareholders from liability to third persons, to any amount for which such third persons might in good faith have given credit to the company, under contracts with the trustees. Such an argument would find support in the observations contained in Lindley on Partnership (4th ed.) 332–334, and the cases there cited. It is not necessary, however, in the present case to consider whether such liability would exist; but we are clearly of opinion that under Article 15 the trustees had authority to incur liabilities on behalf of the shareholders to an amount of at least $120,000; and it is found as a fact, that all the liabilities incurred by the trustees, including the claim of the plaintiff, will not exceed that sum.

It is, indeed, contended by the defendants, that the effect of the articles is to limit the right of creditors to the particular fund which may be realized from the collection of assessments, the sale of shares for non-payment of assessments, and the sale of the company property; but this is obviously too narrow a construction of the articles. Creditors have no power to lay an assessment, or to collect it when laid, or to make sales of shares for non-payment of assessments; or in any way to compel the

trustees to do any of these things. The articles do not in terms provide that creditors shall be limited to those specific funds, and such is not their reasonable construction. These articles, though contained in a deed running to the trustees, must be presumed to have been prepared on behalf of the shareholders, who acted together, and selected each other for associates, and made such provisions as they deemed sufficient and reasonable to procure a sufficient credit for their trustees, and to make it safe for others to give such credit within the limit fixed; and it must be assumed that they intended to fix the amount of the assessment as one element of the authority conferred upon the trustees, and not that creditors should take the risk of receiving their pay from a particular fund, the raising of which might be left to be determined upon thereafter, and over which they would have no control.

Such being the true construction of these articles, the trustees entered into contracts with the plaintiff, which were found to be proper and reasonable, for the development and improvement of the property. They were therefore such contracts as the trustees had authority to make, on behalf of the shareholders. Being made with sufficient authority to bind the shareholders, the contracts are sufficient in form for that purpose. Both of them are stated on their face to be made by the trustees " as trustees of the Boston Land and Wharf Improvement Company." Both are signed by these persons " as trustees " of the same company. The insertion of the word " as " in the body of the contract, and after the signatures, has some significance in negativing the supposition that the words which follow are to be treated as merely a *descriptio personarum*. By the first contract, the plaintiff is to construct a wharf " for said company, on their land," on the line of the dock or canal " to be excavated for said company." The provision for payments is not that the trustees will pay, but that " payments shall be made " at certain times. By the second contract, it is recited that it is proposed that the plaintiff shall construct a canal or dock " for said company, on the company's land," and the plaintiff agrees to do it; and the provision as to payments is substantially like that in the first contract. It is sufficiently plain that it was intended by these contracts to bind the company, and not the trustees

personally; and such was the practical construction put upon them by the parties. See *Cutler* v. *Ashland,* 121 Mass. 588; *Blanchard* v. *Blackstone,* 102 Mass. 343; *Whitney* v. *Wyman,* 101 U. S. 392. The unnecessary addition of seals may be treated as surplusage, and disregarded. *Blanchard* v. *Blackstone, ubi supra. Schmertz* v. *Shreeve,* 62 Penn. St. 457. *Purviance* v. *Sutherland,* 2 Ohio St. 478, 482, 484. *Human* v. *Cuniffe,* 32 Misso. 316. The work was done, under these contracts, for the company, and the plaintiff was paid in part, and, the latter portion of the estimates not being paid, he abandoned the work, and it is found as a fact that he was justified in doing so. Under these circumstances, he can recover the value of his work on a *quantum meruit. Fitzgerald* v. *Allen,* 128 Mass. 232. *Van Deusen* v. *Blum,* 18 Pick. 229. In the latter case, the unauthorized addition of a seal to the contract was held not to defeat the plaintiff's right to recover on a *quantum meruit.*

The plaintiff is therefore entitled to recover, and the entry must be, *Judgment affirmed.*