## PARKER COUNTY vs. J. R. COUTS & CO.

SUPREME COURT, AUSTIN TERM, 1883.

*County Scrip—Want of Seal does not Invalidate.*—It is not necessary to the validity of county scrip that the county clerk issuing the same should affix the county seal thereto.

*Same—Registration no bar to Defense of Invalidity.*—The registration of the indebtedness of a county, and the approval of the claims thus registered by the county court, does not estop the county from the defense that a claim thus registered is void.

From Parker County.    Opinion by Walker, J.

The appellant's first ground of assigned error is, that " the court erred in sustaining appellees' demurrer to appellant's special plea, denying the validity of the purported obligations sued upon, because the same were not sealed with the seal of the county court, pursuant to the act of August 13th, 1870, and charging that the same were void *ab initio* and in striking out said plea."

The purport of the special plea referred to above is, in effect, that county paper or scrip, sued on by the plaintiff, required, in order to give them any validity, the affixing officially to them, by the county clerk issuing them, the seal of the county court of Parker county; that said instruments were issued without it and were consequently void. The plea alleged further that the registration of them, if made as alleged, was, as against the county, fraudulent, and that it could not create any obligation against it.

The act of August, 13th, 1870, did not alter in any respect the law as it had before existed so far as it related to the jurisdiction of the

county courts over the settlement of county accounts, or as to the manner in which their payment should be made.

The act of 1848, and that of 1870, both used the following language, viz:—" The said courts shall have power to lay off and divide their respective counties into convenient precincts for the election of justices of the peace; * * * to allow and settle all county accounts and direct their payment in such manner and at such times as may meet the public interest."

See § 33, Acts of 12th Leg. (1870) p. 108 (Pasch. Dig., Art. 6111); and see Art. 1329, Pasch. Dig. These statutes made provision also that each county court should have a seal as follows:—" County Court, ——— County, Texas," (the blank to be filled with the name of the county) to be kept in the clerk's office, and that it "shall be used in the authentication of all official acts of said court, or of the clerk of said court, * * * in all cases where a seal shall be necessary for the authentication of any of said acts."

Each of said acts provide specially that the county court may issue writs and process through the clerk of the court, and that the seal of the court shall be affixed to all such writs, but in express terms dispenses with the necessity of the seal as to writs of subpoena.

The scrip which is sued on is neither a writ nor process, but it is county indebtedness; and the account which was merged in it belongs to that class of county accounts which the statute contemplates the county court shall have power to settle, and to " direct the payment of in such manner as may meet the public interest." (See Arts. 3388, 3395, Pasch. Dig., providing for expenses of keeping prisoners by the sheriff, and liability of county to him therefor, and payment therefor by draft by the chief justice of the county on the county treasurer.)

The defense set up in the plea under consideration is, that the want of the seal of the county court on the instruments sued on rendered them invalid, and that their invalidity was not cured by the due registration of them. We are of a different opinion. We think, however, that a due regard to precision and care may well suggest as a proper rule for the guidance of the county court, that its official orders for the payment by the county treasurer of moneys to those holding claims which that court has ordered to be allowed and paid should be duly certified under the seal of that court, in order to assure the treasurer of the genuineness of the order or draft upon

him; and in analogy to rules applicable to similar subjects, the draft or order on its face, or else by proper evidence accompanying the same, ought to show with reasonable certainty such facts as will make apparent the basis and authority on which the order or draft is drawn, so as to exhibit the fact to the county treasurer that it is founded on a valid claim and has been so far acted on by the county court as to authorize that court to order its payment. Such matters as these relate to the form and regularity of the evidence of right rather than to any intrinsic, incurable defects in such instruments as would render them void. The mere irregularity in form would not necessarily avoid the instruments if they were otherwise valid. Instruments wanting in such authenticity, emanating from a clerk of a court having a seal, which he is entitled to use to authenticate, as these are, might well warrant the county treasurer to refuse recognition of their genuineness without more full and satisfactory evidence than the bare signature of the clerk; and if payment should be refused, the holder would not, nevertheless, be denied his right to recover on the claims if otherwise entitled in law or equity to demand payment.

As has been seen, the statute not only does not prescribe a rule for the manner in which the county court shall pay county claims, but it confers a discretion on it on that subject, which is limited only by what it deems to be " the public interest." The code of criminal procedure, Art. 3395, Pasch. Dig., provided at that time that " the chief justice shall give to the sheriff a draft upon the county treasurer for the account allowed, * * * and the same when presented to the treasurer shall be paid out of any money in his hands." These statutes when viewed together, and construed in *pari materia*, warrant the interpretation, we think, that the presiding officer of the county court was authorized, after the sheriff's claim for keeping prisoners had been settled and ordered to be paid by the county court, to draw officially his draft on the treasurer, in favor of that officer, for the amount thus adjusted and settled, and that unless the county court in its discretion should direct otherwise, that the presiding justice might, if he saw proper to do so, execute the same without the seal of the court, and that if the chief justice (or presiding justice, under the county court organization in 1870) did authenticate such draft with the seal of the court, (conceding that he might, and

in strictness ought,) yet the failure to do so would not render the draft invalid.

In this case the draft was signed by the clerk and not by the presiding justice. We have not been able from our search among the statutes to discover any authority given to the clerk to issue instruments of this character. The assignments of error presented in the brief of counsel do not, however, bring in review any question as to the validity of the drafts on that account, and we will not discuss the propositions which might otherwise arise in case it was true that the clerk had no such authority. If it should turn out that they were invalid as drafts, for that cause, the plaintiff would be under the necessity, by amendment, of setting up such other cause of action on the original indebtedness as they are able to do under the facts of their case.

If no mode be pointed out, the body corporate, within the compass of its powers, may enter into contracts just as a natural person may make like contracts. Thus, the contracts of a municipal corporation need not be under seal or in writing unless the statute of incorporation, or some by-law of the corporate body, so requires. City of Selma vs. Mullin, 46, Ala. 411. And where the charter contemplates the business of the corporation to be transacted by a special body, the acts of such a body, evidenced by a written vote, are as completely binding upon the corporation and as complete authority to their agents as the most solemn acts done under the corporate seal.

Fleckner vs. United States Bank, 8 Wheat., 338.

Where duly appointed officers or agents, acting within the scope of their authority, execute an instrument on behalf of a corporation, signing their own names and affixing their own seals, such seals are merely nugatory, and the instrument is to be regarded as a simple contract, and, if otherwise valid, binding on the corporation as such.

Regents vs. Detroit Young Men's Society, 12 Mich. 138.

Blanchard vs. Blackstone, 102 Mass., 343.

Burrell vs. Boston, 2 Cliff. (C. C.) 590.

Heidelberg School District vs. Horst., 62 Penn. St., 301.

Counties, although they are constituted by law public corporations, are integral political divisions of the state government, created by law with corporate endowments for the purpose of general state policy and government, as well as for the local interests of the counties, are regulated and governed by the general laws of the state,

enacted from time to time by the legislature. It is apparent, there-fore, that they do not act subject to the conditions in such public corporations,—often require them to contract and perform many of the functions through a common corporate seal. Counties do not exercise their corporate rights and duties exclusively through a single tribunal, nor are they exercised through a common seal of their public political corporations; but they perform them under the gen-eral laws of the state, administered through such Courts, Commission-ers, Statutory Tribunals of various kinds, Agents, Officers, Commit-tees, and other agencies, each independent, but acting in concert w'th the other.

Such being the case, the principles above quoted clearly indicate that the question, whether the instruments sued on are valid without the seal of the court, does not depend upon the rule applicable to corporations, which, under the law of their existence, requires them to act through their common seal. If the action of the county court was authorized by the statute it is not material to enquire whether the act in question was under a corporate or other seal, or whether it was evidenced by writing or was merely verbal.

Appellant's second assignment of error is that:—"the court erred in sustaining appellees' general demurrer to appellant's plea of *non est factum*, denying the execution of said scrip in toto, by the county or any of her legally authorized agents, and alleging that the same did not purport to be sealed and delivered as the legal act of said county; and that it was a forgery against said county, and in strik-ing out the same upon demurrer, and denying appellant a new trial upon said issues raised."

The plea was held insufficient by the court on demurrer, and as it fully met all the requirements of a plea of *non est factum*, so far as formal allegations is concerned, the demurrer to it was evidently sus-tained upon the ground that the imputed forgery did not constitute an answer to the petition, which alleged that the claims sued on were duly registered under the act of May 1st, 1874, (14th Leg. p. 189) providing for the registration of county claims.

The plaintiffs alleged in their petition the due registration of the drafts on the 21st of July, 1874, by the then holder of them, and that they afterwards, on the 24th of September, 1874, became the owners of them by purchase for a valuable consideration paid.

It is urged by the appellees' counsel, that the registration was in

legal effect an adoption and approval of the claims by the county, and that the defendant is concluded by the action of the county court from questioning their validity in the hands of an innocent purchaser for value. The act referred to is entitled "an act to authorize the several counties of this state to raise means to pay their present indebtedness;" and, as its title implies, is intended as a financial measure whereby to effect the payment of the debts of the counties.

It provided measures to enable the county court to ascertain the true and just indebtedness of the county, and to cause the same to be paid in the order of the approval, and the regisration to be made of claims against it, according to the order of their presentation for approval and registration, respectively.

The act provided that none but those claims which were thus registered and endorsed "approved" should be paid by the county treasurer or accepted by any sheriff, or other tax collector, in payment of county taxes. No provision was made for the trial of the genuineness and validity of any claim refused by the county court to be approved by it.

The remedy of the holders in such case, if it existed, was to be found under the other laws of the state.

Under this state of case the question is fairly presented, whether a county by thus registering its indebtedness, and by the approval of the claims thus registered by the county court, is estopped to set up the defense that a claim thus registered is void.

This proposition must, we think, be determined in the negative.

County warrants are not commercial paper entitled to the privileges of negotiable paper by the law merchant so as to invest the holder with an absolute legal title, free from equities between the original parties.

It is broadly laid down by Burroughs, in his work on Public Securities, p. 632, that "these instruments [county warrants] not having the qualities of negotiable paper are not only subject to the defense of want of power, or *ultra vires*, to which such paper is subject, but they are also subject to a defense of fraud, or failure of consideration, both against the original holder and his assignee; indeed, as to matters of defense, warrants of municipalities stand upon precisely the same ground as other non-negotiable paper," citing authorities.

The non-negotiable character of the instruments here sued on, it

would seem from the conclusion of the writer just quoted from, is not affected by the fact that it is in form of a draft drawn by one office upon another, used for liquidating the amount due to a public creditor. Ib. p. 638, 639.

Our statute, (code of criminal procedure—supra) it is true, uses the term "draft" as descriptive of the voucher to be issued to the sheriff by the chief justice, but we think the word is used in a sense synonymous with "order."

The act of registration of the drafts had no greater or different force as a judicial judgment upon those claims than was the original action of the county court upon the sheriff's unliquidated claims for services, when it settled them, and ordered these drafts to be issued to him for payment. The court acted first on one state or phase of the claims, and, in the second instance, upon the same claims in their altered form, from that of an open account to that of an allowed and liquidated claim, and in both instances they recognized the claims as valid. The purpose of the two several investigations, and actions upon the claims by the count courty, was simply induced under the law for different objects. In neither case did the approval of the county court preclude the county from a defense which would show the claims to be fraudulent and void.

In Shirk vs. Pulaski County, 4 Dill. 209, (Ark.) the case was to enforce the collection of a county warrant issued by the county court for a larger amount than was due, in order that from its market value the creditor might realize the amount really due.

The court held that the warrant was void for the excess beyond the amount really due, even in the hands of a *bona fide* purchaser for value. It was claimed that the act of the county court in auditing and adjusting this claim was binding on the county; but the court was of opinion that such action did not have the force of a judicial judgment, and that the true rule upon the subject was, that in the absence of fraud or mistake, and within the limits of their power, the action of the county court in such matters was binding. They cannot, however, the court said, bind the county by ordering a claim to be paid which is not a county charge, or by allowing more than the statute allows.

See Burroughs on Pub. Sec., p. 633, for the above statement of the Court's opinion. The author adds, that there existed a statute in Arkansas against allowing more than one dollar for each dollar of the

claim against the county, and remarks:—"The principle announced, we think, a correct one if there had been no such statute on the subject," and so it appears to us.

A township in Missouri voted to subscribe for stock in a railroad company. The proper county court,—March 28th, 1872,—made the subscription, and, June 4th, ordered that the bonds in payment therefor be issued. They were issued in October following, but bore date the day of the subscription. They were sealed with the seal of the court and signed by the clerk and by A, as presiding justice, although the latter did not become such until October.

Neither the county court nor the other justice thereof consented to A's act. The bonds were not registered, nor was the certificate of registration which the act of March 30th, 1872, (General Assembly of Missouri) required indorsed thereon.

In a suit by an innocent purchaser, for value, upon the bonds, held by Supreme court of the United States, (11 Otto. 693, Anthony vs. County of Jasper)—opinion by chief justice Waite,—that the holder was charged with notice that A was not presiding justice at the time the bonds bore date; also, that the bonds being signed by A, was equivalent notice that they were not in fact issued before the passage of said act, and that they are consequently void. The opinion says:—" Dealers in municipal bonds are charged with notice of the laws of the state granting power to make the bonds they find on the market. This we have always held."

And, "Purchasers of municipal securities must always take the risk of the genuineness of the official signature of those who execute the paper they buy. This includes not only the genuineness of the signature itself but the official character of him who makes it."

These rules, applied as they are to municipal corporation bonds, which are issued as and are treated on the footing of mercantile negotiable paper, has still greater force and reason for its application to non-negotiable county scrip or warrants.

These rules clearly allow the right of the county of Farker to show the invalidity of the drafts sued on, by permitting it to establish the facts set forth in the plea of *non est factum*, notwithstanding the drafts were originally issued and subsequently duly registered and approved by the county court, and that the holders of them are innocent purchasers for value.

Wherefore, we conclude there was error, and that the judgment ought to be reversed and the cause remanded.

Adopted.