ISAAC B. MATHEWSON AND JOHN KLOOTE v. THE CITY
OF GRAND RAPIDS.

*Municipal corporations— Grading contract—Delay in performance
—Liability of city—Ultra vires—Pleading.*

1. Where, in a suit by contractors against a city to recover dam-
ages for being delayed in the performance of the contract, the
declaration sets forth the contract in full, but not the specifi-
cations, which are referred to in the contract, and made a
part thereof, it is proper pleading for the defendant to attach
to its demurrer a copy of the specifications, and thus exhibit
the entire contract to the court.

2. A contractor cannot recover damages of a city for being delayed
in the performance of a contract for grading a street in such
a manner as necessarily to cause the embankment to rest
partially upon the lands of abutting owners, one of whom
enjoins the performance of the contract, thereby causing the
delay complained of, it appearing that both parties acted in
good faith, and under the misapprehension that the city had
a right so to use the abutting property as a natural and necessary
incident to the improvement of the street, and without compen-
sation to or the consent of the abutting owners; such compensa-
tion being afterwards made, and the contract performed, and
the contractor paid the contract price in full.

3. A request by the board of public works of the city that the
contractors desist from work in front of the land of other
abutting owners in like manner affected pending such litigation
is unimportant, as a compliance therewith would not make
the city liable for the resulting damages.

Error to superior court of Grand Rapids.　(Burlingame,
J.)　Argued May 14, 1891.　Decided December 21, 1891.

*Assumpsit.*　Plaintiffs bring error.　Affirmed.　The facts
are state in the opinion.

*Taggart, Wolcott & Ganson,* for appellants.

*William Wisner Taylor,* for defendant.

MORSE, J. This case comes here on declaration and demurrer. The demurrer was sustained in the court below.

The substance of the declaration, as stated in plaintiffs' brief, and mainly correct, is as follows:

On the 14th day of May, 1888, plaintiffs entered into a contract with the city of Grand Rapids to improve North College avenue, which was executed in a proper manner by both parties. The improvement consisted of the grade and fill of such street from East Bridge street north to the city limits; the plaintiffs being required to furnish all material and incidental work, and according to plan, specifications, and profile on file with the board of public works. The plaintiffs, by the terms of the contract, were to commence on the 21st day of May, 1888, and complete the work on or before August 15, 1889. By the third paragraph of the contract, the time named for the completion of the work is made material, "and of the very essence of this contract; and for each and every day the contract shall remain unperformed, after the time named for the performance thereof, the said board of public works may, in its discretion, deduct the sum of ten dollars from the amount to be paid by said second party on this contract." The street was to be graded, as it is alleged in the declaration, 66 feet wide, and a fill was necessary at certain points of 26 feet above the surface of the adjacent premises.

It is alleged by the plaintiffs that in the making of said contract the defendant undertook and agreed that the preliminary steps necessary to be taken on its part to secure the right to make such an improvement, and in the manner called for by the contract, had been taken, and that it had the right to so contract and so improve said street. And the plaintiffs further allege that they believed that the city was acting with full authority, and had such right, and that such contract gave them full power to execute the same in every particular as they were required to do by its terms. Plaintiffs allege that they did go on and employ a large number of men, and secured the necessary material, and commenced work thereon, and were in condition to complete the work in every respect, in accordance with the conditions and terms of said contract.

Plaintiffs further allege that at the time of the making of said contract, and for about a year thereafter, defendant had not secured the right from any of the property-owners adjacent to North College avenue, including one Sophie Vanderlip's property, at the point where the same was by the terms of the contract to be filled, to fill the same as the contract required; that making the fill, as required by the contract, necessitated an encroachment upon Sophie Vanderlip, and other adjacent property-owners; that the slope of such fill, as required by the contract and specifications, reached over upon the land of such parties; that Sophie Vanderlip obtained an injunction against the prosecut'on of the work in front of her premises from the superior court of Grand Rapids, and other property-owners, holding in the same manner as Sophie Vanderlip, asserted their rights against the execution of said contract by plaintiffs in front of their premises; that the injunction obtained by Sophie Vander-lip was affirmed in the Supreme Court, and by reason thereof, and of the claims of other parties from whom said defendant had obtained no right to have said contract carried into execution, plaintiffs were delayed in the performance and execution of the contract for the period of about one year.

The declaration alleges that after such rights were obtained, as they were, by the city from these several parties, they completed the work in question, but never waived any of their rights to claim damages by reason of this breach of the contract, as aforesaid, and they so notified said city and its various officials, and, in the receipt of the amount paid them by said city, refused to receive the sum in full of extra work and damages occasioned by such breach of contract, and so notified the said city. Plaintiffs allege a presentment of their claim to the city, and that it was entirely rejected. The declaration also alleges that the board of public works and its officials desired them not to continue work on said improvement in front of the premises owned by persons from whom the city had obtained no right to have said contract carried into execution. The declaration also alleges the knowledge on the part of the defendant that it had no right or authority to cause said College avenue to be filled, as the said contract required plaintiffs to fill the same. Various items of damage àre set out in the declaration. Plaintiffs admit that the city has

paid them in orders or money the amount of the contract price.

The declaration set forth the contract in full, in which contract the plan, specifications, and profile of the work were referred to and made a part of the contract, but the declaration did not give the plan, specifications, and profile in full. The defendant' in its demurrer attached the specifications in full of the work. This was proper pleading. They were a part of the contract, and necessarily a part of the declaration, and, not being therein given in full, it was proper for the defendant thus to exhibit them to the court, so that the whole contract might be before it. The demurrer insisted—

1. That, as a matter of law, under the terms of said contract, the defendant did not · undertake and agree that the preliminary steps necessary to be taken by the defendant had been taken on its part, and that said defendant had the right, and had secured the right from the property-owners adjoining and adjacent to the street, to improve said street; and that the defendant did not, by such contract, obligate itself to see that said plaintiffs were not hindered, delayed, or interfered with in carrying out such contract.

2. That the board of public works had no power to make any request that the plaintiffs should not go on with their work, or to prevent them from continuing it, and that the delay was not caused by defendant, or any of its agents, as appears from the declaration, but by the act of the person enjoining the city and plaintiffs from the prosecution of said work; that, if any request was made by such board, such action was *ultra vires* and void, and not binding upon defendant, and no right of action could grow out of plaintiffs' stopping work at the request of such board.

3. That for these reasons the declaration, as a matter of law, does not disclose a right of action against the city.

It is not claimed that the contract, by its express terms, guarantees that the city has the right to make

this improvement, or has secured such right from the property-owners along the line, but it is contended that, by entering into this contract, there is an implied agreement upon the part of the city that it has prepared or will prepare the way for the performance, and it is to be presumed that the very thing essential for that purpose constituted an element of the agreement. It is apparent from the contract, the pleadings in this case, and the facts in the case of *Vanderlip v. City of Grand Rapids*, 73 Mich. 522, that the city authorities, at the time they entered into this contract, supposed that they had the right to improve the street as contemplated by such contract. All the necessary steps to grade and improve the streets, so far as the city supposed it was concerned, had been taken. The litigation in the Vanderlip case did not grow out of any want of jurisdiction in the city to grade and improve the street proper, but in raising the grade of the street at certain places, one of which was in front of Mrs. Vanderlip's home. The city supposed that it had the right, without the consent of the owners of the abutting property, as an incident of said grade, to let the earth of the fill slide over and upon the abutting lots, if the width of the street proper at the top of the grade was not increased thereby beyond the lines of the highway; that such filling in was not taking of private property for public use; and that the city was not required to take proceedings to condemn the land so occupied by the sliding of the fill. Mrs. Vanderlip enjoined the city and these plaintiffs from grading the street so that part of the embankment at the bottom would encroach upon her land, and we held that she had the right so to enjoin them. The delay in the performance of the work came from this injunction, and the litigation connected with it. The work was not

stopped by the voluntary action or direction of the city. It was not delayed by the actual fault of the city on account of its neglect or failure to furnish any material, or to do any other thing within its power to do, and known to be its duty to perform. It simply failed in its knowledge of the law as to its power to rest the base of the embankment upon the adjoining lands, without the consent of the owners and without compensation to them. In such a case, if the work had been permanently stopped by the injunction, there is no doubt but the plaintiffs could have recovered the value of the work performed. In this case they finally completed their contract, and were paid the contract price in full. What they are now seeking is damage for the delay caused by the injunction. I do not think the city is liable for such damages, and the demurrer was properly sustained.

The fact that the board of public works requested them to desist from the work, pending the Vanderlip litigation, in front of the premises of owners situated in the same manner as those of Mrs. Vanderlip, cuts no figure in this case. A compliance with such request could not make the city liable for the damages resulting from such compliance.

The cases cited by plaintiffs' counsel do not reach the case before us. I have carefully examined these cases, and find but few of them to have any connection with the point here in controversy.[1]

In *Doolittle v. Nash,* 48 Vt. 441, the railroad company was enjoined from constructing its road upon certain lands,

---

[1]Counsel cited, in addition to the cases referred to in the opinion, the following authorities: 2 Suth. Dam. 521, 522; Dill. Mun. Corp. § 449 (373); *Whitfield v. Zellnor,* 24 Miss. 663; *Allamon v. Mayor,* 43 Barb. 35; *County of Christian v. Overholt,* 18 Ill. 223; *Railroad Co. v. Van Dusen,* 29 Mich. 431; *U. S. v. Behan,* 110 U. S. 338; *Steel Rail Co. v. Hinckley,* 17 Fed. Rept. 584; *Sullivan v. Commissioners,* 114 Ill. 262; *Jones v. Judd,* 4 N. Y. 412; *Clark v. Mayor,* Id. 338; *Smith v. Buffalo,* 44 Hun, 156; *Masterton v. Mayor,* 7 Hill, 61; *Blanchard v. Blackstone,* 102 Mass. 343.

because it had not acquired the right to do so; whereby the performance of the contract by plaintiff in that case was prevented. Plaintiff was a subcontractor under defendant. The court held that the injunction was without the fault of either of the parties, but said that the defendant was impliedly under the same obligation to see that the plaintiff had the opportunity to perform his contract that the plaintiff was to perform it.

"It was the business of the defendant to know before he made the contract, and thereby induce the plaintiff to incur the expense of preparation, that he had the right to have the contract performed. If he had not that right, then he was in fault in making the contract, and should be liable to the plaintiff for the damages, and it is no answer to say that he supposed he had the right and acted in good faith."

It was intimated that, if the injunction was unlawfully obtained, the defendant had his remedy upon the injunction bond; if rightfully obtained, then the defendant would have his remedy against the railroad company, it being the party in fault. This decision seems to be based upon the idea that, if the plaintiff had no right of action against defendant, he was without remedy, and must bear the loss, which would be unjust; and that the party in fault would be liable to the defendant for what he was obliged to make good to plaintiff, and in the end the loss would be borne, as it ought to be, by the party in fault. The railroad company was presumed to know whether it had acquired the right to pass over the lands, and for that reason would be liable for the damages resulting from its failure to obtain such right. It will be seen that no municipal corporation or its agents were involved in the suit, and the rights and remedies discussed were those of private persons or corporations.

In *Bill v. City of Denver*, 29 Fed. Rep. 344, the plaintiff was employed by the city as an inspector of

sewers. The city passed an ordinance creating a sewer district, reciting that it was in accordance with the petition of a majority of the property-owners,—a condition required by the law. After considerable work had been done, it was ascertained that a majority of the property-owners had not petitioned, and the city abandoned the work. The court held that the city was liable for the work done by the plaintiff on this sewer, on the ground that there was no other body or tribunal to pass upon the fact whether a majority of the property-owners had petitioned for the improvement; so that the action of the council in the first place, reciting that a majority had so petitioned, was conclusive upon the city as against the plaintiff, and he had a right to rely upon the fact that the city had power to proceed and make a levy to pay for the work.

In *Moore v. Mayor*, 73 N. Y. 238, the action was brought for a balance upon a contract fully performed by the plaintiff for the paving of certain streets in the city of New York. The payment was resisted on the ground that the resolution authorizing the paving was not published in the Leader according to law. It was held that the city must pay; that the act of paving these streets was within the general power of the municipality; that there was no apparent defect in the proceedings upon the journals of the common council; and that the irregularity claimed—and it was only an irregularity—was the omission of an act *in pais* outside of the council chamber, and of which no record would appear in the journals of the council. It was held, under these circumstances, that an individual, dealing with the agents of the city government, should be permitted to regard the acts of the government as valid, in the absence of any apparent defect, either in the power or the manner of its exercise.

These are the only cases cited that have any close bear-

ing upon the question at issue here, and, as it will be seen, they fail to touch it. The specifications in the contract before us provided that the street should be graded 66 feet wide, the whole width of the street, and that when the embankments were made they were to be "made with side slopes of one and one-half feet horizontal to one foot vertical." It was as plain to the plaintiffs as to the city officers that when the embankments were made, if the street was graded its full width, the embankments must rest more or less upon the lands of abutting owners. To so use these lands without compensation, and without the consent of the owners, was not within the general powers of the municipality, and the plaintiffs, in such case, were bound to know the limit of such power. *Moore v. Mayor*, 73 N. Y. 245; *Newman v. Sylvester*, 42 Ind. 106. And when the city acted in good faith in letting this contract under the misapprehension that it had a right so to use the abutting property, as a natural and necessary incident to the improvement of the street, without compensation to the owners, and without their consent, and when the plaintiffs also supposed they had such right, they having the like knowledge of the law, which all are supposed alike to know as the common council, the city cannot be held liable to plaintiffs for damages claimed for interruption of the work by the injunction of Mrs. Vanderlip. It was for plaintiffs, as well as the common council, to make inquiry as to the right of the city to place or rest a portion of the foundation of its embankment upon the abutting premises. It was their duty to know whether the city had the right, and common prudence required them to ascertain the authority of the city before they undertook the work. See *Newman v. Sylvester*, 42 Ind. 111-113, and cases there cited.

In *Davies v. City of East Saginaw*, 66 Mich. 37, 40, in

a grading contract exactly like this in respect of its grades to the full width of 66 feet, we held that the contractor could not recover for the work actually done in filling outside of the street line, for the reason that neither the city nor the contractor had the right to put any dirt upon the abutting lands. In this case the plaintiffs received pay for all the work they did at the contract price, and cannot recover for damages occasioned by the stoppage of the work by injunction because of the unlawful act of the city, in which they joined.

There is no claim in the declaration that the city knowingly misled the plaintiffs.

The demurrer was properly sustained, and the judgment of the lower court is affirmed.

The other Justices concurred.