## EBENEZER L. FINLEY *vs.* CHARLES L. BOEHME.
### *December,* 1830.

F, intending to build on his farm at C, and have the bricks made there, agreed with B under seal as follows: that is, "B contracts to make for the said F 300 m bricks on said farm, in the following proportions: not less than one-fifth salmon; two-fifths red; two-fifths black. The first kiln to be ready for delivery in the month of May next. In consideration of which, F contracts with B to furnish free of expense, all the scantling and plank necessary for making the bricks; and pay B $5,50 for every thousand of good merchantable bricks in the following manner: one-half of said amount of bricks to be paid for in pine wood, delivered at the stump, when called for, on said farm, at $2 50 per cord; $300 to be paid when the first 100 m are delivered; $300 when the second 100 m are delivered; and the balance when the contract is completed." HELD, upon the construction of this contract, that the engagement for the delivery of the wood, was an independent covenant on the part of F, with which he was bound to comply, without waiting for the burning of the first kiln of bricks.

In an action upon a contract under seal, where the declaration assigns and relies upon specific breaches, on which the issues are made up, the court will not consider whether the plaintiff has delivered the articles for which he claims compensation within the time limited by the contract, if that inquiry is not necessarily involved in the issues as joined, nor determine the effect of such an omission upon the rights of the parties.

The plea of general performance, when relied on as an answer to a specific breach assigned in a declaration in covenant, must either be regarded as a nullity or as putting in issue the acts of commission or omission imputed to the defendant as violations of his contract.

APPEAL from *Baltimore* County Court.

This was an action of covenant brought by *C. L. Boehme,* the appellee, against *E. L. Finley,* the appellant. The plaintiff's declaration stated that "whereas by certain articles of agreement made the 17th February, 1820, at &c. between the said plaintiff and defendant, (which said articles, sealed, &c.) the plaintiff, for the considerations therein mentioned, did covenant with the defendant, to make and burn for him, the defendant, on a certain farm of the defendant, called *Canton,* lying and being in the county aforesaid, 300m bricks in a workman-like manner, and of the following proportions :—not less than one-fifth to be of

salmon bricks, two-fifths of red bricks, and two-fifths of black brick—the first kiln of bricks to be ready for delivery in the month of May next, ensuing, the day and year aforesaid—the number of bricks to be ascertained by the carters' tickets, to be given up on the delivery of each load. And the defendant, on his part, for and in consideration of the premises, covenanted and agreed to and with the plaintiff, that he, the defendant, would furnish free of expense to the plaintiff, all the scantling and planks necessary for making the said bricks; and would pay the plaintiff, five dollars and a half for every thousand of good merchantable bricks, made in the manner described in the said articles of agreement—one-half of said bricks to be paid for in pine wood, delivered at the stump when called for, on said farm, at two dollars and fifty cents per cord—three hundred dollars to be paid to the said plaintiff when the first hundred thousand bricks should be delivered—three hundred dollars when the second hundred thousand bricks should be delivered—and the balance to be paid when the said contract should be completed." 1st breach, And the plaintiff in fact saith, that afterwards, viz. on the 10th day of May, in the year aforesaid, at &c. he did make and burn, in a workman-like manner, on the farm of the defendant, called *Canton,* one kiln of bricks containing 100m bricks; and then and there had the same ready for delivery to the defendant, and did then and there offer to deliver the same to the defendant. 2nd breach, And the plaintiff in fact further saith, that on the day and year last aforesaid, at &c. he the plaintiff, did make 120m bricks, and was then and there ready and prepared to burn the same, but was, by the said defendant, hindered, prevented, and forbidden from burning the same, and from making and burning the residue of the said 300m bricks. 3d breach, And the plaintiff in fact saith, that although he hath always, from the time of making the said articles of agreement, well and truly performed all things therein contained, on &c. yet protesting that the said defendant hath not, &c. the said plaintiff avers,

that although he did, on the tenth day of May, in the year aforesaid, make and burn in a workman-like manner, 100m bricks, on the farm of the defendant, called *Canton;* and then and there had the same ready for delivery, and offered to deliver the same to the said defendant; yet the said defendant did not, and would not pay, and as yet hath not paid to the said plaintiff, the sum of three hundred dollars; and although the said defendant, on the day and year last aforesaid, at, &c. and on the farm aforesaid, did make 120m bricks, and was then and there ready and prepared to burn the same; yet the defendant hindered, prevented, and forbid the plaintiff to burn the same, or to make and burn the residue of the said 300m bricks; and although afterwards, viz: on, &c. at, &c. the plaintiff did demand of the defendant, and require him to deliver to the plaintiff, on the farm aforesaid, 350 cords of pine wood at the stump; yet the defendant wholly neglected and refused to deliver the same to the plaintiff, and still refuses. And so the said plaintiff saith, that the said defendant hath not, &c.

To this declaration the defendant pleaded, 1st, general performance.

2nd. That the said plaintiff never did deliver to the said defendant, any good merchantable bricks whatever, and of this, &c.

3d. And for further plea to the *first* count or breach in the declaration contained, the said defendant, by leave, &c. says that the plaintiff ought not, &c. by reason of any thing in the said *first* breach of the declaration contained; because he says, that, protesting, &c.; yet the said defendant in fact saith, that the said defendant did not hinder, prevent, or forbid, the said plaintiff from burning the 120m bricks, or from making and burning the residue of the 300m bricks in the declaration mentioned; and of this he puts himself upon the country.

4th. And for further plea to the *second* breach or count in the declaration, the said defendant, by leave, &c.—the said defendant, protesting as in the last plea, says that the

plaintiff, for any thing in the said *second* count or breach contained, ought not, &c. because he saith that he, the said defendant, did pay to the said plaintiff the sum of three hundred dollars, in the said *second* count or breach mentioned, and all other sums of money which, by the said agreement he ought to pay him; and of this he puts himself upon the country, &c.

Upon these pleas issues were joined.

At the trial of the cause the following exceptions were taken:—1st. The plaintiff gave in evidence the following contract, to wit: " Agreement between *Charles L. Boehme* and *E. L. Finley. E. L. Finley,* intending to build a dwelling house and other houses, on his farm at *Canton,* and to have all the bricks for such houses made on the farm; and *Charles L. Boehme* being desirous of contracting for the making of said bricks, the said *Charles L. Boehme* and *E. L. Finley,* have mutually contracted with each other, and by these presents do hereby contract with each other, in the following manner—that is to say: *Charles L. Boehme,* contracts to make for the said *Ebenezer L. Finley,* 300m bricks, on said farm; the bricks to be made and burnt in a workman-like manner, and in the following proportions:—not less than one-fifth to be of salmon bricks, two-fifths of red bricks, and two-fifths to be of black bricks. The first kiln of bricks to be ready for delivery in the month of May next—the number of bricks to be ascertained by the carters' tickets, which are to be given on the delivery of each load—in consideration of which *E. L. Finley* contracts with the said *Charles L. Boehme,* to furnish, free of expense, to said *Boehme,* all the scantling and plank necessary for making the said bricks, and to pay the said *Charles L. Boehme* five dollars and a half for every thousand of good merchantable bricks, made in the manner heretofore described; in the following manner:—one-half of said amount of bricks to be paid for in pine wood, delivered at the stump when called for, on said farm, at two dollars and fifty cents per cord—three hundred dollars to

be paid to the said *Charles L. Boehme*, when the first 100m bricks are delivered—three hundred dollars to be paid when the second 100m bricks are delivered—and the balance to be paid when the contract is completed. As wit-witness our respective hands and seals, this seventeenth day of February, 1820."

And then proved by *Charles Brown*, a competent witness, that he examined the bricks manufactured by the plaintiff, for the defendant, at *Canton* farm : that there was a clamp of bricks burnt—he recommended *Boehme* to take off nine inches from the clamp, which *Boehme* did—79,300 remained; there was six cords of wood remaining, and casing sufficient for all the raw bricks—then 120,000 bricks in the shed, as nearly as they could ascertain—the 79,300 bricks were burnt as well as the clay would admit, the clay was weak, the bricks were merchantable—the unmerchantable bricks taken down, were seven or eight thousand. That *Finley* refused to deliver the wood to burn the other bricks with, unless paid for in cash—that the bricks under the shed were well prepared for burning, and were not burnt for want of wood. The conversation with *Finley* was on the 3d day of November. That the bricks would have worked up well on the ground, but would not bear transportation—merchantable bricks were from $5.50 to $6— would have made no difference in price by selling 300,000. *Finley* told *Boehme* that he had not complied with his contract—that he, *Finley*, was in advance, and would furnish no more wood unless paid for in cash—half a cord of wood requisite to burn 1000 bricks. And also proved by *James Shields*, that the witness is a brickmaker—selected the clay himself—commenced where he found the best clay, convenient to water—dug clay for 300,000 bricks—was detained three or four weeks for want of plank—the clay was all dug and the floors ready—applied to the carpenter for plank— never saw *Finley* at the brick yard, although he staid there constantly, the carpenter furnished the plank—he applied to *Finley* at his office—in two or three days the plank came—

he moulded about 200,000 bricks—Mr. *Boehme* would not have more moulded—after they stopped, *Boehme* and witness called on *Finley*—*Finley* refused to deliver wood unless for cash—clay was selected with care—there is none better there—and more bricks have been since made out of it—the bricks were well burned, well moulded, and well tempered—115,000 to 120,000 in the clamp—shed would hold 160,000 to 170,000—never saw *Finley* at the yard—when he applied to *Finley* for plank, *Finley* said he thought he had it, and in two or three days the plank came—they were afterwards delayed six or seven days from burning for want of plank—he never applied to *Finley* for plank, for the clamp—*Boehme* was there once or twice a week—there was wood enough cut upon the place, in the same field, to have burnt another clamp. The plaintiff also offered evidence to the jury, that he delivered 4100 bricks to defendant, which were received by defendant. The defendant to support the issue on his part, gave evidence of the following payments, to wit:

*Cash payments made C. L. Boehme.*

| | | | |
|---|---|---|---|
| 1820, May 9, | Cash paid him | - - | $100 00 |
| " May 11, | Cash paid him | - - - | 200 00 |
| " June 17, | Cash paid him | - - | 250 00 |

And of the delivery of 43½ cords of wood, at $2.50 per cord. The defendant then moved the court to direct the jury, that if they believed that the defendant *Finley*, was in advance in money to the plaintiff upon the contract, he was not bound to deliver the wood demanded, until paid for—which direction the court [ARCHER, C. J., HANSON, and KELL, J.] refused to give; but instructed the jury, that the defendant under the contract was bound to deliver any wood demanded, which might be necessary for the burning of the bricks, in the progress of the contract—the defendant excepting.

2d Exception. The plaintiff and defendant, having given the evidence as stated in the defendant's first exception, the defendant prayed the court to direct the jury. 1st. That

the plaintiff is not entitled in this case, to recover any other damages than the excess between the price of so much fire wood delivered at *Canton* farm, as would have been necessary to burn so much of the 300,000 bricks, as were not burnt by plaintiff; and the price at which said wood was by the contract in this case, to have been furnished by defendant. 2d. That the plaintiff is not entitled to recover, unless the jury shall find from the evidence, that the first clamp of bricks was ready for delivery by the time stipulated in the contract, provided they find that the delay was not caused by the defendant; or that if entitled to recover at all, nothing on account of the bricks burnt in said first clamp, which directions and each of them, the court refused to give. Defendant again excepting, and the verdict and judgment being for the plaintiff, he appealed to this court.

The cause was argued before Buchanan, C. J., Stephen and Dorsey, J.

*Johnson,* for the appellant, abandoned the first exception, and contended for a reversal of the judgment upon the second exception. 1st. Because to entitle the plaintiff to recover at all in this form of action, it was necessary for him both to aver and prove that the first kiln of bricks, mentioned in the agreement given upon, was ready for delivery in May, 1821, the time stipulated for that purpose in the agreement. 2d. That if he was entitled to recover upon other parts of the agreement in relation to the remainder of the bricks, he was not authorised to recover for this first kiln. He cited, 1 *Saund. Rep.* 320. [*m* 4.] 10 *Johns. Rep.* 213. 7 *Pick.* 181. 8 *Ib.* 178. 6 *Harr. and John.* 38. *Saund. P. and C.* 121.

*Scott,* for the appellee, cited, 1 *Wheat. Sel.* 383. 2 *Hen. Black.* 389. 10 *Johns. Rep.* 203.

Dorsey, J., delivered the opinion of the court.

After adverting to the state of the pleadings, he said that at the trial of this cause, two bills of exceptions were taken by

the defendant, the first of which he has abandoned in this court, as also the first prayer in his second bill of exceptions.

The first branch of the second prayer in the second bill of exceptions is, "that the plaintiff is not entitled to recover, unless the jury shall find from the evidence, that the first clamp of bricks was ready for delivery by the time stipulated in the contract, provided they find that the delay was not caused by the defendant." This instruction is predicated upon the concession, that the testimony offered was sufficient to warrant the jury, but for this objection as to time, in finding for the plaintiff on all the issues. To test the correctness of the court below, in refusing this direction, the only inquiry to be made is, does the argreement between the parties make this stipulation, as to the time, within which, the first hundred thousand bricks were to be ready for delivery, a condition precedent, the performance of which by the plaintiff, must precede his right to require the defendant to comply with any of the covenants, the infraction of which is made the basis of this action? That such is not the construction given to this contract by the appellant's counsel is obvious, or he would not have made the prayer he did, in the first bill of exceptions; nor the first part of the prayer in the second bill of exceptions; both of which are founded on the admission, that the defendant's engagement to deliver the wood is an independent covenant, not at all depending on the time of the burning of the first kiln of bricks. That it was the design of the contracting parties that a portion of the 350 cords of wood should be used in burning the bricks, will not be denied. If so, a part of it must of necessity be delivered before the burning of any bricks. But there is nothing in the contract itself, nor in the intention of the parties to be collected from it, to show that the wood was to be delivered in parcels, as the burning of the bricks progressed. If so, the argreement would have been shaped accordingly, and not have provided, as it has done, that it should be delivered at the stump "*when called*

*for.*" Its terms negative such an interpretation. The wood was to be given as a payment of half the price of the whole quantity of bricks to be burnt, and not merely to be used in burning them: as for that purpose, 150, instead of 350 cords, would have been sufficient. We regard therefore, this engagement for the delivery of wood, as an independent covenant on the part of *Finley,* and with which, he was bound to comply, without waiting for the burning of the first kiln of bricks within the time limited by the articles of agreement. This disposes of the *first* branch of the *second* prayer, in the *second* exception. But the *second* part of that prayer presents a different question. It concedes the plaintiff has a right to recover, but it invokes an instruction of the court to the jury, that nothing is recoverable on account of the bricks burnt in the first clamp. If this point could arise under the pleadings in this cause, it would distinctly present the question, whether the stipulation as to time, is to be regarded as of the essence of the contract, and in the nature of a condition precedent; or as a mutual or independent covenant. Believing as we do, that we are not imperiously required to decide this question as to time, under the issues in the case before us, we mean to express no opinion upon that subject; and we are the more inclined to do so, from the consideration that this point has not been fully argued, and that it will come before us in a much more important suit, now upon our docket. Under the issues joined on the 2d, 3d and 4th pleas, it is manifest as regards time, that no question could arise, as those pleas by legal implication admit the truth of all the facts stated in the declaration (of which the time, &c. is one,) except those, which they specifically deny.

It is under the issue joined then, on the plea of general performance, that the appellant must avail himself, if at all, of the violation of the stipulation as to time. And in considering his right to do so, it may not be amiss to premise, that the plaintiff can recover damages for no other breaches than those charged in the declaration, as the specification thereof

is an implied admission, that the defendant, in all other re-spects, has complied with his contract. It follows, as a co-rollary, that the plea of general performance in this case, applies only to those covenants which are alleged to have been broken. If it were otherwise, and according to its literal import, the plea of general performance put in issue every covenant on the part of defendant to be performed, it might produce this strange absurdity, that the plaintiff would recover damages for breaches of covenants, whereof he had never complained; but on the contrary, the per-formance of which by legal intendment, he had admitted by his declaration. To any imaginable declaration which could be framed on the articles of agreement, that form the ground work of the present action, the plea of general per-formance is inapplicable and vicious. If it be pleaded, even to a debt on a bond conditioned for the performance of cove-nants, and issue be taken thereon, a verdict on such issue forms no basis on which a judgment can be entered, but a repleader must be awarded. To a declaration like that be-fore us, assigning specific breaches, it must either be re-garded as a nullity, or as putting in issue, the acts of omis-sion or commission imputed to the defendant, as violations of his compact. In either aspect, the court below were right in refusing the instruction. The plaintiff avers in conformity to the agreement, that in the month of May, " he did make and burn in a workman-like manner, on the said farm of the said defendant, called *Canton,* one kiln of bricks, containing 100m bricks, and then and there had the same ready for delivery to the defendant, and did then and there offer to deliver the same." Instead of traversing this fact as he ought to have done, if he intended to rely upon its falsehood as a bar to a recovery, either in whole or in part, the defendant pleads " that the said plaintiff never did de-liver to the said defendant, any good merchantable brick whatever;" thus, by legal intendment distinctly admitting the allegation, that the first kiln of bricks was burnt and ready for delivery at the time stipulated. This fact there-

fore, the plaintiff need not prove, and the defendant is precluded from controverting it on the trial. The County Court then, could not do otherwise than refuse the direction to the jury which they were called upon to give. Concurring with them in their opinions in both bills of exceptions, we affirm their judgment.

**JUDGMENT AFFIRMED.**