# SUPERIOR COURT OF BALTIMORE CITY

Filed January 25, 1894.

HEAVER

VS.

LANAHAN.

*John V. L. Findlay* and *Henry W. Fox* for plaintiff.

*John P. Poe* and *Frank Gosnell* for defendant.

RITCHIE, J.—

This case has been before the Court several times on preliminary questions, and before the Court of Appeals on the pleadings. It was afterwards tried before the late Judge Stewart without a jury, but his death occurred before he had decided it. It has now again been tried before the Court without a jury, and under an agreement that the issues should be taken as having been formally joined, and that it should be heard on the same evidence which was taken before Judge Stewart, it has been most fully and earnestly argued, and I have given to it the careful consideration which the interest manifested by counsel and the importance of the questions involved, seemed to require.

The contract, for the breach of which this suit is brought, was executed on June 16th, 1888. At that time the defendant was the owner of the ground rents on twenty-seven unimproved lots situated on the north side of North avenue, and the legal title to the leasehold in said lots was held by Anthony S. Bonn.

By this contract the plaintiff agreed to build a house on each of said lots; and the defendant, desirous that his ground rents might be secured and made more valuable, agreed to "assist" the plaintiff in making said improvements by paying him a bonus of $800 on each house, and to cause the leasehold interests to be assigned to plaintiff, Bonn joining in the contract and agreeing to make such assignments as the defendant might request.

No question arises in respect to the first twenty-two of said houses; the contract as to them was carried out by each party, and the controversy here relates to the last five, Nos. 23, 24, 25, 26 and 27.

On October 22d, 1888, the City of Baltimore passed an ordinance for the extension of Barclay street northwardly through and over the last five of said lots. In view of the passage of this ordinance defendant proposed that they should modify the contract and abandon the erection of the last five houses. To this, however, the plaintiff would not consent, and on his refusal to do so the defendant, on October 12th, notified him in writing not to build the houses in question.

On October 12th the first twenty-two houses were at various stages of completion and some little grading may have been done on the last five lots, but the plaintiff does not seem to have begun the erection of any of the last five houses. On October 15th the Street Commissioners notified plaintiff that any improvements made in the proposed bed of Barclay street would be at his own risk. He paid no attention to either of the above notices, but began and went on with the erection of the houses on the lots referred to, and when the twenty-third, twenty-fourth and twenty-fifth had reached the stage at which, under the contract, he was entitled to the bonus instalment of $150 on each house, probably about November 1st, he made demand for the money. The defendant, because of his notice not to build, refused to pay this instalment and stated to plaintiff that he would not pay any bonus on any of the five houses in the proposed bed of Barclay street. The plaintiff thereupon and because thereof stopped all work on these five houses.

Meanwhile the proceedings for the opening of the street continued; the Commissioners in their final return, made on January 23d, 1889, allowed $1,650 damages for the improvements in the bed of the street, the plaintiff took an appeal therefrom and in February, 1890, he was allowed by a jury in the City Court the sum of $2,000 damages, which amount has been paid to him by the city. In July, 1890, he brought this suit to recover damages for breach of contract in respect to these five houses.

The declaration sets out the contract and assigns as the breach the refusal of defendant to pay when due the first instalments on the 23rd, 24th and 25th houses, and the notice that he would not pay the remainder of the bonus of $800 on each house as the same might under the contract accrue, whereby, it is alleged, the plaintiff was compelled to desist from the further prosecution of the said work. The defendant filed three pleas; the first and second are now out of the case; a demurrer to the third was overruled by Judge Stewart, whereupon an appeal was taken by plaintiff, and the judgment was reversed. See Heaver vs. Lanahan, 74 Md. 493.

The third plea set up the notice not to build and the notice from the Street Commissioners, and also averred that the plaintiff in the trial of his appeal from the award of the Street Commissioners had claimed against the city the same damages which he claimed in his declaration against the defendant. The Court of Appeals held that the street appeal case was not between the same parties; that the plea failed to allege that the damages claimed were recovered; that the notice given by the Street Commissioners was in excess of authority, and that notwithstanding such notice the plaintiff, as against the city, had a right to continue the work until it was ready to pay his damages.

Since the hearing in the Court of Appeals the defendant has filed the fourth, fifth and sixth pleas. The fourth embraces the matter set up in the third, repeating in the same terms the averment of the instruction to plaintiff not to build said five houses, and further avers that the plaintiff in his street appeal not only claimed, but also recovered, and has been paid all damages now claimed against defendant except the bonus, and, as to the bonus, that it was to be paid for the building of the houses, and the plaintiff, *because of the condemnation and appropriation of the ground by the city*, did not in fact build them. The fifth alleges that the plaintiff accepted said damages from the city in full satisfaction of all claims against the defendant, and the sixth plea denies any breach.

It is clear from the evidence, and indeed it has not been disputed in the argument, that the defendant committed a breach of the contract. Even if his motive was a desire to avoid the useless erection of five houses which would be torn down under the ordinance for opening the street almost as soon as erected, and the increased expense that building them would impose on the city, the street proceedings interposed no legal obstruction to the performance of the contract, and such motive furnished no valid excuse for instructing plaintiff not to build these houses, or for his refusal to pay the bonus instalments. The evidence, in fact, shows two breaches. First, in the notice of October 12th, not to build, which, however, is not declared on; and second, in the refusal of defendant to pay the bonus instalments due under the contract, and notice that he would not in the future pay any bonus on these five houses, which is the breach assigned. As between these two breaches, each considered by itself as a cause of action, the right to recover may be more clearly established in one case than in the other, and the measure of damages would be different; and again, as to the second, the measure would depend upon whether it is to be construed as a partial or entire breach.

It is necessary, therefore, to determine, first, upon what ground, or upon which breach, the plaintiff is entitled to recover, and if only on the second, then the legal quality or scope of that breach; secondly, the damages to which he may be entitled under the peculiar facts of this case.

As has been stated, the breach assigned is the refusal to pay the instalments due and the notice as to future ones, and not the prevention of performance on the part of the plaintiff by the notice from defendant not to build. Under the authority of Black vs. Woodrow, 39 Md. 194, and many other cases, this notice was a legal prevention and was a breach by defendant of the implied obligation on him to suffer said houses to be built. Had the plaintiff assigned this as the breach, he would have set out a perfectly clear cause of action, and there could have been no question as to the rule of damages. His attention was called by the Court to his failure to do so, but he did not ask leave to amend. His theory was that the notice not to build was not sufficient; that performance up to the stage at which, under the contract, he would be entitled to demand the first instalment, and a refusal then to pay, were necessary; or that, if the notice was a sufficient breach, then he had a right to recover on it, because it was proved as a fact, and was also set up and admitted by the plea, although not assigned in the declaration. This, in my judgment, is not correct. The letter of October 12th was, as construed by defendant himself, an instruction not to build, and was thus a clear breach of the entire contract as to these five houses and gave an immediate right of action. Black vs. Woodrow, 39 Md. 194; Heaver vs. Lanahan, 74 Md. 493; Ecken-

rode vs. Chemical Co., 55 Md. 51; Dugan vs. Anderson, 36 Md. 567; Masterton vs. Brooklyn, 7 Hill 61; United States vs. Behan, 110 U. S. 338; Hinckley vs. Pittsburg Co., 121 U. S. 264; 2nd Sutherland, 1624; 2nd Sedgwick, Sec. 618, page 269.

Under 39th and 74th Md., and the authorities there cited and approved the defendant, subject to his liability for a breach of contract, had a right *to stop the work, and it was not only not necessary for the plaintiff to go on until the first instalment was due, but it was his duty to stop on receipt of notice. This notice not to build may have a bearing on the measure of damages, but the plaintiff is not entitled to recover on it as for a breach.*

A failure to assign any breach would of course be fatal on demurrer or on motion in arrest, and so the failure to assign any given breach is fatal to recovery on it, no matter how fully it may be established by the evidence, or admitted by the plea. A plaintiff cannot recover on the evidence alone; it is upon the pleadings and evidence applicable to the pleadings, that he must recover, if at all. He cannot recover on any cause of action, or breach, except such as may be charged in the declaration, (or, in some cases, in the replication) and the specification of the breaches charged is an implied admission that the defendant in all other respects has complied with his contract. If it were otherwise, the plaintiff would be permitted to recover for a breach of which he had never complained, and for the non-performance of a covenant, the performance of which he had by legal intendment and admitted in his declaration. Finley vs. Boehme, 3 G. & J. 42-51; Turner vs. Walker, 3 G. & J. 377-389; Dorsey vs. State, 4 G. & J. 472-477; Navigation Co. vs. Dandridge, 8 G. & J. 248-311; State vs. Gaither, 11 G. & J. 161-173; Merrick vs. Bank, 8 Gill 59-74; Railroad vs. Sewell, 35 Md. 238; State vs. Robinson, 57 Md. 486-497.

The precise question was raised and it was expressly held in Marsh vs. Bulteel, 5 B. & A. 507, that a plaintiff cannot recover on a breach not set up in the declaration, although it may be disclosed in the plea. See also Poe's Pleading, 809; 1 Chitty Pleadings, 702 (841); Stephens, 145.

It is perfectly true that if a plaintiff attempts to set out a breach, but does it defectively and inaccurately, his declaration will be aided by any admission in the plea which cures the defect or supplies the omission, and a plea may thus cure not only matters of form but matters of substance. This rule is illustrated by the following authorities: Poe on Pleading, Sec. 753; Gould, page 166, Sec. 192; Stephens, 147; United States vs. Morris, 10 Wheat. 246-287; Zerger vs. Sailer, 6 Binney 24; Slack vs. Lyon, 9 Pick. 62; Hill vs. George, 5 Tex. 87. But in this case the plaintiff has not undertaken to set out the breach in question, and done it insufficiently; he has not undertaken to do it at all; and while the plea may aid a defectively assigned breach, it cannot supply one.

It is urged by the plaintiff that the Court of Appeals treated the notice not to build as the breach, and likened this case to that of Black vs. Woodrow. But it must be remembered that the case was not before the Court of Appeals in the same aspect in which it is now before this Court; it was before the Court on a demurrer to the plea, but it is before me on the cause of action set out in the declaration. What the Court of Appeals said must be taken in connection with the facts set out in the plea before it, and there is nothing whatever to show that it intended to declare any principle in conflict with the established rules of pleading as shown by the authorities above cited. What the Court said must also be qualified to the extent that the evidence disclosed distinguishes this case from Black and Woodrow.

The breach upon which the plaintiff is entitled to recover is the one declared on, that is, the refusal to pay the instalments due and the notice as to future ones, and the character of this breach must be determined, because on its character depends the measure of damages. The usual remedy for non-payment of an instalment is suit for its recovery, and a declaration by a party that he will not pay money to become due in the future, is generally not a breach unless the declaration remains unretracted when the time for payment arrives. The mere failure to pay an instalment when due, or even the refusal to do so, when not

incidental to a repudiation of the contract, will not authorize the other party to abandon the work and recover damages as if performance on his part had been prevented, or as if there had been a breach of the entire contract. Such failure or refusal is not a legal prevention, and does not amount to a denial of the right of the builder to go on with the work. Such default might give the builder a right to abandon the work and sue for what he had done, or he could go on with the work and sue at once for the instalment; but as he is not prevented from performance he can not abandon and recover damages as if he had been, and the fact that the builder may not otherwise have the means wherewith to prosecute the work does not make the default a legal prevention.

On the other hand, if there be any thing in the contract to show that further performance is dependent on prompt payment, and that payment is an essential condition precedent to, or concurrent with, the prosecution of the work; or if the contract shows on its face that the builder cannot comply with its terms unless the payment is made, then default in payment is a breach of the entire contract, and is as fully a prevention of performance as if the builder had been forbidden to go on. Moore vs. Taylor, 42 Hun. 45; Palm vs. Railroad, 18 Ill. 217; County of Christian vs. Overholt, 18 Ill. 223; McElwee vs. Bridgeport Co., 54 Fed. R. 627; 2 Sutherland 1624; 2 Sedgwick, Sec. 618, p. 269. This case shows more than a mere default in the payment of the instalments demanded. The evidence shows that the plaintiff had so far erected three of the houses as to be entitled to the first instalment: that he had begun the fouth and the fifth; that he was ready and able to finish them all; and the contract shows that the bonus provided for was distinguishable from money received generally by the plaintiff, and that its application to the work in question was expressly required by the contract; that the purpose of its payment was to *"assist"* the plaintiff in the erection of these houses; that it was to be "applied" generally "to the building of said twenty-seven houses," and specifically to the payment of bills for labor and materials supplied therefor, and that

a failure so to apply it should work a forfeiture of all the plaintiff's rights under the contract. The payment of these instalments as the houses progressed was thus expressly contemplated, and was an essential condition of the contract, without which the plaintiff could not, in fact, perform his own obligations under it. The contract expressly stipulates that the bonus should in part constitute the means of which the houses were to be erected. If the provision that the houses were to be built at the plaintiff's "cost and expense" conflicts with these requirements, it must give way. And further, this refusal was not only a refusal to pay the instalments due on the three houses, but was accompanied by a notice to plaintiff that defendant would not pay any bonus on any of the five houses in the bed of Barclay street. This refusal and notice, it may be fairly assumed, embraced also a notice that if plaintiff, nevertheless, went on and finished the houses, the defendant would not cause the leasehold interests to be assigned to him. This evidence, in my judgment, shows a renunciation and breach of the entire contract as to these houses, a legal prevention by defendant of performance by plaintiff.

It is held in Hochster vs. De la Tour, 2 Ell. & B. 676, and other English cases that the absolute renunciation of an executory contract by one party, even before the time has arrived for performance by either, is a breach of the entire contract, and that suit thereon may at once be brought. The express notice that defendant would not pay any future instalments would, I think, bring this case even within the English authorities. They were fully considered in Dugan vs. Anderson, but, as that case was distinguished, the Court said that it was not necessary to say whether they would be accepted or not when the precise question arose. Dugan vs. Anderson, however, was distinguished on the ground that in that case performance of the contract had been entered upon by the plaintiff, and "the defendant broke up the contract while it was being performed by the plaintiff, and the action was not commenced until after (the) breach," so that this case must at least come within the law of Dugan vs. Anderson and the other authorities above cited, and see especially McElwee vs. Bridgeport,

54 Fed. R. 627, cited supra, a case recently decided by the United States Circuit Court of Appeals, in which the facts were very similar to those of this case.

It cannot be that after a refusal to pay the instalments due for work then done, and notice that defendant would not pay any future instalments on any of said houses, such refusal and notice being founded on the order given to plaintiff not to build, plaintiff was nevertheless, in order to recover full damages, obliged to go on until successive instalments became due, especially under the peculiar provisions of this contract. See 7 Hill 75. In fact his hands were tied by the notice of October 12th, and it was not possible for him to go on. Had he done so on the theory that performance up to the successive stages of the work was necessary in order to make refusal to pay a breach, and had thus finished the houses, and then brought his suit, he could not, in view of this notice not to build, have recovered either the bonus, or for any work done after the 12th of October. The work for which plaintiff in Black vs. Woodrow recovered was done before the notice. See Clark vs. Marsiglia, 1 Denio 327, approved in 39th and 74th Md.

While the plaintiff's right of recovery is not as clear as if he had declared on the notice of October 12th as the breach because not resting on the authority of precisely similar cases, I am of the opinion, that under the facts of this case the refusal to pay the instalments due and the notice then given as to future ones, constituted a breach of the entire contract as to these five houses, and that the plaintiff was thereby, in the words of the declaration, "compelled to desist from the further prosecution of the said work." This breach was substantially another notice not to build, limited in its effect on the right to recover for work done by the operation of the notice of October 12th. The fact urged by defendant that plaintiff had means of his own wherewith he might have finished these houses is immaterial. As held by the cases above cited, the mere failure to pay an instalment does not amount to a legal prevention, although the builder, having no means of his own, is thereby in fact prevented from going on; and on the other hand,

if the act of defendant in refusing to pay does amount to a legal prevention, the fact that the builder has means of his own does not affect the character of defendant's act. Railroad vs. Placide, 35 Md. 315.

The matter next to be considered is the measure of damages. The damages which plaintiff claims to have suffered are, viz.:

1st. The loss of the improvements as far as made.

2d. Loss on materials useless for any other purpose.

3d. Loss resulting from plaintiff's consequent breach of sub-contracts for labor.

4th. Loss of prospective profits.

It is clear that in a suit on such a breach as this, the plaintiff could not recover the contract price, or, in this case, the bonus, not having performed the contract on his part, and so the Court of Appeals has decided. But under the general rule, he would be entitled to recover all damages which had been directly caused by being prevented from performance, and which he established by proof. The general rule of damages in cases of prevention is fully set forth in the authorities above cited on the point that the notice of October 12th was a breach. Among other damages, a plaintiff would be entitled to recover for work done before the act of prevention, for the loss of such profits as would have been the direct and immediate fruits of the contract, and (see Chicago vs. Greer, 9 Wall 726) for the loss of material on hand which was useless for other purposes. Whether or not he could recover for losses on sub-contracts will be referred to again. The only damages, however, which the plaintiff seeks to recover in this case are for his lost profits, but some of the defences made require me to notice the other elements of damage mentioned.

The plaintiff seems to have been compensated in the City Court for the improvements, for lost material and on his sub-contracts. The lost improvements, having been put up after the notice not to build, he could not, as has been said, have recovered for them against defendant; for the lost material he could have recovered against the defendant, and compensation by the city and abandonment of

any claim here on this account, is an advantage to defendant; for loss on the sub-contracts, there are many authorities to the effect that he could not recover against defendant, but in view of what is said in Rittenhouse vs. M. & C. C. of Baltimore, 25 Md. 336, this might be an open question if the claim were made in this case; but, if the defendant would otherwise be liable, the payment by the city was also an advantage to him. As to these three elements of damage, however, and the effect that their payment by the city would have on the right to recover them in this action, it seems sufficient to say that the plaintiff has offered no evidence in respect to them, and expressly disclaims any claim for them in this case. These are all the damages which were recovered in the street case; the plaintiff recovered nothing there for lost profits, and the defendant's proof fails to sustain the averment that the plaintiff recovered in that case all damages covered by the declaration except the bonus, or that he accepted from the city such damages as were recovered, in discharge of all, or of any, claim against defendant. But all that is necessary to rule on the point that plaintiff was paid by the city for these damages, is that he is not entitled to recover them in this case, which I will do for the reasons stated, and without accepting the grounds submitted by defendant. The point made in respect to the ground on which these damages were recovered from the city, and that they were in fact caused by the act of the city, will be considered in connection with the claim for profits.

The next element of damage is the loss of prospective profits. These are not speculative or remote, and the right to recover them, if sufficiently shown, is fully recognized. There may be difficulty in ascertaining the exact amount to which plaintiff is entitled, but uncertainty as to the amount does not make the damage uncertain and contingent in law, and does not preclude recovery where it is shown that some damage has certainly resulted as the direct consequence of the breach. Wakeman vs. Wheeler, 101 N. Y. 209. The plaintiff has offered evidence to show a loss of profits, and the defendant has offered none tending to show that the cost of the houses would have been such as that plaintiff would have failed to realize any profit had the contract been fulfilled.

It is argued by defendant that the plaintiff was in fact stopped in his work by the notice from the Street Commissioners and the condemnation proceedings, and not by the act of defendant. The evidence fails to establish such fact, but shows on the contrary that the plaintiff paid no attention to such notice or proceedings; that he would have completed the houses in question long before those proceedings would have interfered with his right to go on, and that he was stopped by the refusal of defendant to pay instalments due and the notice that none would be paid in the future on any of these houses.

It is again urged by defendant that the plaintiff in the street case recovered against the city the damages which he there obtained, and sought to recover also the bonus, on the express ground that he had been stopped in his work by the city, and that such damage and loss had been caused by the condemnation proceedings; and that such claim in the City Court amounted to an election to rescind his contract and discharge the defendant; and that having made such claim in the City Court he is estopped now from asserting that he was prevented from completing said houses by the act of defendant.

The contention that the plaintiff made the claim in the City Court which is now set up is based upon the prayers which he then submitted. As to any supposed rescission, it appears that on November 12th, 1888, the plaintiff through his attorney notified defendant in the most explicit manner that he would sue for damages, and I see no evidence in the street case of an election to rescind the contract, nor does the act referred to amount in law to a rescission. The supposed estoppel by reason of the alleged inconsistent position of the plaintiff, will be considered first in connection with the bonus.

The argument that the plaintiff sought to recover the bonus from the city on the ground stated, is founded on the fact that he submitted a prayer to the effect that if the jury found that he would have completed the houses and received the bonus had the

completion not been prevented by the street proceedings, then he was entitled to recover such bonus from the city. Assuming the hypothesis of a prayer to be equivalent to the positive assertion of a fact (which of course is not the case) it is to be noted that the *instruction* was *rejected* and the plaintiff recovered nothing in that case on account of lost bonus. The fact that there was no recovery under it, to say nothing more, distinguishes this case from Edes vs. Gary, 46 Md. 24, cited by defendant; and all that was decided in the other case cited, Hall vs. McCahan, 51 Md. 345, was that the petitioner had failed to make out a case for equitable relief on the evidence; his allegations were impeached by his own previous contrary statements made under oath, and he was denied relief, not because he had previously made contrary statements, but because he was unable to prove that the statements then made were true. But the point now considered seems to be fully covered by the decision of the Court of Appeals in this case. Under the third plea then before the Court it was contended that the fact of the plaintiff's having *claimed* these damages and the bonus from the city precluded him from claiming them against the defendant, but the Court held that, apart from other defects the failure to aver that they were *recovered* as well as claimed was fatal. The mere fact therefore of having claimed the bonus in the City Court would not preclude a claim for it now, if plaintiff were entitled to it, and it is no defence now to a claim for damages resulting from its loss. To bar a claim for any particular damages now, it must thus, at least, appear that the same damages were both claimed and recovered in the City Court, and while claim and recovery might or might not be a bar to the recovery in this case, if they were claimed, of the other damages which were recovered from the city, it is sufficient to say that they are not now claimed, and for reasons already given will not be allowed. There is nothing, therefore, in the proceedings of the street case to affect the right of the plaintiff to recover now for his lost profits; he claims now only for them, and for them he neither had any recovery or made any claim in the

City Court, and for them he is entitled to recover in this action.

Whether if the plaintiff were now claiming damages for which defendant would otherwise be liable, and which were paid by the city, a stranger to the contract, he would, in the absence of evidence to show that he accepted payment in discharge of the defendant, be precluded from recovery, it is not necessary to decide, but it is by no means clear that he would not still be entitled to recover for them. See 2 Sutherland 1598; Miller vs. Ward, 2 Conn. 494; Merryman vs. State, 5 H. & J. 423; Whiting vs. Insurance Co., 15 Md. 297.

The plaintiff is entitled to recover for the loss of what would have been the "direct and immediate fruits of the contract," that is, for the loss of the profits he would have made had the contract been performed. The fact that the ground rents of the defendant were not improved in value by reason of the failure to erect the houses, cannot affect the damages, because such failure was the result of his own act, and the damage done to plaintiff is not abated by the fact that the breach may have also worked a loss to defendant.

If the plaintiff had been building these houses altogether for the defendant, and at a contract price, the lost profits would be the difference between what would have been the cost of building them and such price; but in this case the houses were to be built partly out of the moneys of plaintiff and partly with the bonus, and, when finished, were to have been the property of plaintiff. Under these circumstances the lost profits would be the difference between what would have been the net cost to plaintiff and the market value of the finished houses. In seeking to ascertain what this is, I exclude from consideration as a factor the alleged sale of four of these five houses to Sanders. This agreement of July 5th, 1888, that Sanders should "advance" $8,500, to be paid during the erection of the twenty-seven houses, "from time to time, and in such sums as the said Sanders may deem it prudent so to do," and that the plaintiff, in consideration thereof, should, when the same were built, "convey" the four houses mentioned, taken in connection with the testimony of Sanders, I regard not as a contract of

sale, but simply an agreement by Sanders to make advances, and by the plaintiff to convey said houses as security for the loan. For reasons hereafter stated, I will also leave out any possible effect of the street ordinance.

Upon the proper method of ascertaining the cost where, under a building contract, its ascertainment is necessary in estimating the damages, the Court in Masterson vs. Brooklyn says that it should be estimated upon a substantial basis and not left to rest on speculative opinions; that its constituent elements should be ascertained from sound and reliable sources; that it is a very easy matter to figure out large profits on paper, which in a great majority of cases are seriously reduced when subjected to the contingencies and hazards incident to actual performance; that a jury should scrutinize with care any conjectural account of the cost, and should not overlook the risks and contingencies which are almost inseparable from the execution of such contracts, and which increase the expense independently of the outlays in labor and capital.

In applying these rules, I have some difficulty, because of the absence of full and definite proof. The evidence shows that of the twenty-one similar houses (the first was larger) which were finished, four have been disposed of in trade and five by sale; two at $2,000 each and three at $1,900. The only evidence as to the cost is that of the Superintendent Fox. He testifies that the total cost was "in the neighborhood" of $2,100; then that he had made an estimate from which the average cost of the whole twenty-one would have been $2,024; then afterwards, that the cost was $2,100 and deducting the $800 would make the net cost to plaintiff $1,300; then again that the average would be $2,024 but his testimony is general and indefinite; he fails to state what items are included in his totals, and his estimates as to cost and average are coupled with such qualifications as "about," or that they are as near as he "can get at it." The difference between the net cost to the plaintiff and the market price at which these houses, if

built, might have been sold, would represent his lost profits, but taking the figure of $1,300 given by Fox as the net cost, I do not, by any means, think that the plaintiff is entitled to recover the difference between that figure and the figure at which any of the five other houses sold. There are many important items which, I am satisfied, were not included in the estimates given, and which would have reduced the profits. By the breach of this contract plaintiff was released from the care and risk of building these houses and his time and labor which otherwise would have been given to them, he was free to employ profitably elsewhere. These are proper items to deduct in estimating profits; 121 U. S. 276, ante, and McMaster vs. State, 108 N. Y. 542. Again, on the 1st of January following the ground rent of $95 on each lot, taxes and insurance would all have begun to run. It is also important to note that these houses were being built to be sold. The evidence shows that of the five sold, the first was not sold until April, 1889, and the last not until April, 1890, and that so far as anything to the contrary appears, these houses were subject while in plaintiff's hands to the above expenses, as well as to the loss of income on his money invested. These probable expenses it is also proper to charge against profits. How long the houses in question would have remained unsold, and subject to the above charges, it is impossible to say; but, as stated, up to April, 1890, while four had been disposed of in trade, or in payment of bills, only five had been sold, and twelve still remained on plaintiff's hands; and whether any of these twelve have since been sold or not does not appear. It is possible that the above expenses might have been met or reduced if these houses had been built, and after a failure to sell, had been rented; but they were built to be sold, and not rented, and it is the well known course of persons in such business, not to rent; at least, not until some considerable time and effort have first been given to effect a sale. There is besides nothing before me to show that any of the finished houses

were ever rented, or what was their rental value. All the items which I have mentioned, as well as the probable expenses attending a sale, ought to be charged against these houses in estimating the probable profits which plaintiff would have made had the contract been performed. These charges would have been incidental to the contract or the property, but the fact of the pending ordinance for condemnation, as possibly calculated to provide an early purchaser and thus reduce charges is collateral and too remote; under it the city stood simply as a possible quasi purchaser who might or might not take the property; indeed the completion of the houses might have induced a repeal of the ordinance; and even in the light of subsequent events it appears that the city did not take and pay for the property until the spring of 1890. On the other hand I could not, as urged by defendant, regard it as impairing the value of the finished houses, because, if finished, the city would have had to pay the market value.

Such, I think, are the rules which must govern in estimating the plaintiff's lost profits, and I will thus estimate them as well as I can from the imperfect data before me. I will reject all the prayers on each side. So far as they are not covered by the rulings of the Court, I reject them either for a want of evidence, or because I do not think they are correct in law, and some of them for both reasons.

On the facts found as above stated the Court rules as matter of law that the defendant committed a breach of the entire contract as to the five houses in question by his refusal to pay the first instalment due under the contract on three of them, and by his notice then given that he would not pay any future instalments on any of said five houses, and that he thereby legally prevented the plaintiff from performing the contract on his part; and that the plaintiff is entitled to recover a sum equal in value to what would have been his direct and immediate profits, if any, on said five houses, had his contract as to them been performed, but that he is not entitled to recover on any other account.